# EXHIBIT A

COPY ORIGINAL

6/2/2014 11:19:51 AM
Shelia Norman, District Clerk
District Court - Bell County, TX
Deputy

270,233-B

Cause No. _____

| | | |
|---|---|---|
| **650 FRONTIER LLC,** | ) | **IN THE DISTRICT COURT** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **OF BELL COUNTY, TEXAS** |
| **SENG C. LIN, LIMEI LIN, PAINE C.** | ) | |
| **BOUN, and CLARA BOUN,** | ) | |
| | ) | |
| Defendants. | ) | **146TH JUDICIAL DISTRICT** |

### PLAINTIFF'S ORIGINAL PETITION

Plaintiff 650 Frontier LLC ("**Lender**") files this Original Petition against Seng C. Lin,

Limei Lin, Paine C. Boun, and Clara Boun (collectively, "**Guarantors**"), states as follows:

#### I.    DISCOVERY CONTROL LEVEL

1.    Lender intends to conduct discovery under Level 2 of Texas Rule of Civil

Procedure 190.3 because this suit seeks monetary relief in excess of $50,000.

#### II.    PARTIES, JURISDICTION, AND VENUE

2.    Lender is Delaware limited liability company. Guarantors owe Lender more than

$2.8 million pursuant to written guaranties made by Guarantors in connection with a commercial

mortgage loan owned by Lender.

3.    Seng C. Lin is an adult individual amenable to service at 1032 S. Hildago

Avenue, Alhambra, California 91801.

4.    Limei Lin is an adult individual amenable to service at 511 W. Newby Avenue,

San Gabriel, California 91776.

5.    Paine C. Boun is an adult individual amenable to service at 511 W. Newby

Avenue, San Gabriel, California 91776.



SCAN

6.  Clara Boun is an adult individual amenable to service at 1032 S. Hildago Avenue. Alhambra, California 91801.

7.  The Court has personal jurisdiction over the Guarantors because they (1) are the owners of a limited liability company organized under the laws of Texas, through which they own and operate a shopping center located in Bell County, Texas, (2) guaranteed payment of the indebtedness owned by Lender, which debt was used by Guarantors to finance their acquisition of the shopping center in Bell County, Texas, and (3) contractually agreed in their loan documents with Lender, both personally and on behalf of their company, to submit to jurisdiction in Bell County, Texas, in the event that they defaulted on the loan.

8.  Venue is proper in this Court pursuant to Section 15.020(b) of the Texas Civil Practice and Remedies Code because Guarantors contractually agreed to venue in Bell County, Texas.  Venue is also proper in Bell County, Texas under Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to the claims occurred in Bell County, Texas. Specifically, Guarantors are the owners of a limited liability company that owns and operates a shopping center in Bell County, Texas.

9.  The amount in controversy is in excess of the minimum jurisdictional limit of this Court.

### III.   THE LOAN TRANSACTION

10.  On or about October 7, 2008, Mark One Capital, Inc. ("**Original Lender**") made a \$2.9 million loan (the "**Loan**") to Eagle Eyes Investments LLC, a Texas limited liability company ("**Borrower**").

11.  Guarantors are the sole owners of Borrower.

2

12.     In connection with the Loan, Borrower and Original Lender entered into a Business Loan Agreement dated October 7, 2008 (the "**Loan Agreement**"). A true and correct copy of the Loan Agreement is attached hereto as **Exhibit A**.

13.     In connection with the Loan, Borrower signed a Promissory Note dated October 7, 2008, in the original principal amount of $2,900,000.00 (the "**Note**"). A true and correct copy of the Note is attached hereto as **Exhibit B**.

14.     In connection with the Loan, Borrower signed a Deed of Trust dated October 7, 2008 (the "**Deed of Trust**").

15.     Under the Deed of Trust, Borrower granted to Original Lender a lien on that certain shopping center located at 4305 South 31st Street, Temple, Texas, commonly known as 31st Street Crossing. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit C**.

16.     In connection with the Loan, Borrower signed an Assignment of Rents dated October 7, 2008 (the "**ALR**"). A true and correct copy of the ALR is attached hereto as **Exhibit D**.

17.     In connection with the Loan, Seng Lin signed a Commercial Guaranty dated October 8, 2008 (the "**Seng Lin Guaranty**").

18.     Under the Seng Lin Guaranty, Seng Lin absolutely and unconditionally guaranteed repayment of the indebtedness owed by Borrower under the Loan Agreement, Note, Deed of Trust, and ALR. A true and correct copy of the Seng Lin Guaranty is attached hereto as **Exhibit E**.

19.     In connection with the Loan, Limei Lin signed a Commercial Guaranty dated October 8, 2008 (the "**Limei Lin Guaranty**").

3

20. Under the Limei Lin Guaranty, Limei Lin absolutely and unconditionally guaranteed repayment of the indebtedness owed by Borrower under the Loan Agreement, Note, Deed of Trust, and ALR. A true and correct copy of the Limei Lin Guaranty is attached hereto as **Exhibit F**.

21. In connection with the Loan, Paine Boun signed a Commercial Guaranty dated October 8, 2008 (the **"Paine Boun Guaranty"**).

22. Under the Paine Boun Guaranty, Paine Boun absolutely and unconditionally guaranteed repayment of the indebtedness owed by Borrower under the Loan Agreement, Note, Deed of Trust, and ALR. A true and correct copy of the Paine Boun Guaranty is attached hereto as **Exhibit G**.

23. In connection with the Loan, Clara Boun signed a Commercial Guaranty dated October 8, 2008 (the **"Clara Boun Guaranty"**).

24. Under the Clara Boun Guaranty, Clara Boun absolutely and unconditionally guaranteed repayment of the indebtedness owed by Borrower under the Loan Agreement, Note, Deed of Trust, and ALR. A true and correct copy of the Clara Boun Guaranty is attached hereto as **Exhibit H**.

25. The Seng Lin Guaranty, Limei Lin Guaranty, Paine Boun Guaranty, and Clara Boun Guaranty are sometimes hereinafter referred to collectively as the **"Guaranties."**

26. The Loan Agreement, Note, Deed of Trust, ALR, and Guaranties are sometimes hereinafter referred to collectively as the **"Loan Documents."**

27. Original Lender assigned the Loan and Loan Documents to Bank of the West (**"Interim Lender"**).

4

## IV.   THE FORBEARANCE AGREEMENT

28.     Borrower, Guarantors, and Interim Lender entered into a Modification and Forbearance Agreement dated December 5, 2011 (the "**Forbearance Agreement**"). A true and correct copy of the Forbearance Agreement is attached hereto as **Exhibit I**.

29.     In the Recitals of the Forbearance Agreement, Guarantors admitted their execution of the Guaranties.

30.     In Section 1 of the Forbearance Agreement, Interim Lender agreed to accept interest-only payments under the Note until December 5, 2012, with the regular monthly payment amounts called for under the Note again being due on and after January 5, 2013.

31.     In Section 2 of the Forbearance Agreement, Guarantors admitted that they guaranteed Borrower's obligations under the Loan Documents.

32.     In Section 3 of the Forbearance Agreement, Guarantors confirmed that they did not have any defenses with respect to the Guaranties.

33.     After execution of the Forbearance Agreement, but before expiration of the interest-only forbearance term on January 5, 2013, Interim Lender assigned the Loan and Loan Documents to Lender.

34.     Lender is the current holder and owner of the Loan and Loan Documents.

## V.   POST-FORBEARANCE DEFAULT

35.     Borrower failed to make to Lender the regularly scheduled payments due under the Note for the months of January 2013 through July 2013.

36.     Borrower is in default under the Loan Documents for its failure to make payments to Lender as and when due.

5

37.     On July 19, 2013, Lender accelerated the indebtedness owed under the Loan Documents.

38.     Borrower and Guarantors were provided notice of Borrower's payment defaults and Lender's acceleration in letters dated July 19, 2013, and December 19, 2013.

39.     Lender demanded payment of the accelerated indebtedness in the July 19 and December 19, 2013, letters. A true and correct copy of the July 19, 2013, letter is attached hereto as **Exhibit J**.   A true and correct copy of the December 19, 2013, letter is attached hereto as **Exhibit K**.

40.     Borrower and Guarantors have failed to pay the accelerated indebtedness in full.

41.     The following amounts were due and owing under the Loan Documents as of January 5, 2014, excluding fees and costs incurred by Lender in connection with attempting to collect the amounts due under the Loan Documents:

| | |
|---|---|
| Principal: | $2,693,142.08 |
| Nondefault Interest: | $89,709.90 |
| Default Interest: | $36,030.86 |
| Late Charges: | $2505.17 |
| Total: | $2,821,388.01 |

42.     Nondefault interest has accrued since January 5, 2014, and continues to accrue, at the per diem rate of $499.06.

43.     Default interest has accrued since January 5, 2014, and continues to accrue, at the per diem rate of $391.72.

6

44.     Borrower filed bankruptcy on January 6, 2014; however, none of Guarantors have filed bankruptcy.

45.     Lender has received payments from Borrower through the bankruptcy totaling $53,533.04, with $8,716.64 of that amount being earmarked, at the direction of the bankruptcy court, to pay real estate taxes owed by Borrower for the shopping center.

## VI.     COUNT I – SUIT ON A GUARANTY (SENG LIN GUARANTY)

46.     Lender hereby incorporates by reference the factual allegations contained in the preceding paragraphs.

47.     Under the Seng Lin Guaranty, Seng Lin guaranteed repayment of the accelerated indebtedness owed under the Loan Documents.

48.     All conditions precedent to the bringing of this action on the Seng Lin Guaranty have occurred or have been waived.

49.     Under the Seng Lin Guaranty, Seng Lin agreed to pay all fees and costs, including attorney's fees, incurred by Lender in connection with collection of the amounts owed under the Seng Lin Guaranty.

50.     Lender has incurred, and will continue to incur, fees and costs, including attorney's fees, in connection with collection of the amounts owed under the Seng Lin Guaranty.

WHEREFORE, Lender prays for the entry of money judgment on Count I against Seng Lin in the following amounts:

a.     Principal in the amount of $2,693,142.08;

b.     Nondefault interest as of January 5, 2014, in the amount of $89,709.90;

c.     Nondefault interest from January 6, 2014, through the date of entry of judgment at the rate of $499.06 per diem;

7

47904111.5

d.     Default interest as of January 5, 2014, in the amount of $36,030.86:

e.     Default interest from January 6, 2014, through the date of entry of judgment at the rate of $391.72 per diem;

f.     Late charges in the amount of $2505.17;

g.     Less the portions of the payments received from Borrower through the bankruptcy that are not earmarked to pay Borrower's real estate taxes;

h.     Plus all fees and costs, including attorney's fees, incurred by Lender in connection with protection of its collateral or collection of the amounts owed under the Loan Documents; and

i.     Plus post-judgment interest.

### VII.   COUNT II – SUIT ON A GUARANTY (LIMEI LIN GUARANTY)

51.    Lender hereby incorporates by reference the factual allegations contained in the preceding paragraphs.

52.    Under the Limei Lin Guaranty, Limei Lin guaranteed repayment of the accelerated indebtedness owed under the Loan Documents.

53.    All conditions precedent to the bringing of this action on the Limei Lin Guaranty have occurred or have been waived.

54.    Under the Limei Lin Guaranty, Limei Lin agreed to pay all fees and costs, including attorney's fees, incurred by Lender in connection with collection of the amounts owed under the Limei Lin Guaranty.

55.    Lender has incurred, and will continue to incur, fees and costs, including attorney's fees, in connection with collection of the amounts owed under the Limei Lin Guaranty.

8

47904111.5

WHEREFORE, Lender prays for the entry of money judgment on Count II against Limei Lin in the following amounts:

    a.    Principal in the amount of $2,693,142.08;

    b.    Nondefault interest as of January 5, 2014, in the amount of $89,709.90;

    c.    Nondefault interest from January 6, 2014, through the date of entry of judgment at the rate of $499.06 per diem;

    d.    Default interest as of January 5, 2014, in the amount of $36,030.86;

    e.    Default interest from January 6, 2014, through the date of entry of judgment at the rate of $391.72 per diem;

    f.    Late charges in the amount of $2505.17;

    g.    Less the portions of the payments received from Borrower through the bankruptcy that are not earmarked to pay Borrower's real estate taxes;

    h.    Plus all fees and costs, including attorney's fees, incurred by Lender in connection with protection of its collateral or collection of the amounts owed under the Loan Documents; and

    i.    Plus post-judgment interest.

### VIII. COUNT III – SUIT ON A GUARANTY (PAINE BOUN GUARANTY)

56.    Lender hereby incorporates by reference the factual allegations contained in the preceding paragraphs.

57.    Under the Paine Boun Guaranty, Paine Boun guaranteed repayment of the accelerated indebtedness owed under the Loan Documents.

58.    All conditions precedent to the bringing of this action on the Paine Boun Guaranty have occurred or have been waived.

9

59.     Under the Paine Boun Guaranty, Paine Boun agreed to pay all fees and costs, including attorney's fees, incurred by Lender in connection with collection of the amounts owed under the Paine Boun Guaranty.

60.     Lender has incurred, and will continue to incur, fees and costs, including attorney's fees, in connection with collection of the amounts owed under the Paine Boun Guaranty.

WHEREFORE, Lender prays for the entry of money judgment on Count III against Paine Boun in the following amounts:

a.      Principal in the amount of $2,693,142.08;

b.      Nondefault interest as of January 5, 2014, in the amount of $89,709.90;

c.      Nondefault interest from January 6, 2014, through the date of entry of judgment at the rate of $499.06 per diem;

d.      Default interest as of January 5, 2014, in the amount of $36,030.86;

e.      Default interest from January 6, 2014, through the date of entry of judgment at the rate of $391.72 per diem;

f.      Late charges in the amount of $2505.17;

g.      Less the portions of the payments received from Borrower through the bankruptcy that are not earmarked to pay Borrower's real estate taxes;

h.      Plus all fees and costs, including attorney's fees, incurred by Lender in connection with protection of its collateral or collection of the amounts owed under the Loan Documents; and

i.      Plus post-judgment interest.

10

## IX. COUNT IV – SUIT ON A GUARANTY (CLARA BOUN GUARANTY)

61.     Lender hereby incorporates by reference the factual allegations contained in the preceding paragraphs.

62.     Under the Clara Boun Guaranty, Clara Boun guaranteed repayment of the accelerated indebtedness owed under the Loan Documents.

63.     All conditions precedent to the bringing of this action on the Clara Boun Guaranty have occurred or have been waived.

64.     Under the Clara Boun Guaranty, Clara Boun agreed to pay all fees and costs, including attorney's fees, incurred by Lender in connection with collection of the amounts owed under the Clara Boun Guaranty.

65.     Lender has incurred, and will continue to incur, fees and costs, including attorney's fees, in connection with collection of the amounts owed under the Clara Boun Guaranty.

WHEREFORE, Lender prays for the entry of money judgment on Count IV against Clara Boun in the following amounts:

a.      Principal in the amount of $2,693,142.08;

b.      Nondefault interest as of January 5, 2014, in the amount of $89,709.90;

c.      Nondefault interest from January 6, 2014, through the date of entry of judgment at the rate of $499.06 per diem;

d.      Default interest as of January 5, 2014, in the amount of $36,030.86;

e.      Default interest from January 6, 2014, through the date of entry of judgment at the rate of $391.72 per diem;

f.      Late charges in the amount of $2505.17;

11

g.   Less the portions of the payments received from Borrower through the bankruptcy that are not earmarked to pay Borrower's real estate taxes;

h.   Plus all fees and costs, including attorney's fees, incurred by Lender in connection with protection of its collateral or collection of the amounts owed under the Loan Documents; and

i.   Plus post-judgment interest.

Respectfully submitted,

POLSINELLI PC

By: */s/ James Billingsley*
James Billingsley
State Bar No. 00787084
Caitlin J. Morgan
State Bar No. 24074757
2501 N. Harwood Street, Suite 1900
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
jbillingsley@polsinelli.com
cmorgan@polsinelli.com

ATTORNEYS FOR 650 FRONTIER LLC

# BUSINESS LOAN AGREEMENT

| | | | |
|---|---|---|---|
| **Borrower:** | EAGLE EYES INVESTMENTS LLC | **Lender:** | Mark One Capital, Inc. |
| | 4306 South 31st Street | | Corporate Office |
| | Temple, TX 76502 | | 18800 MacArthur Blvd. |
| | | | Suite 150 |
| | | | Irvine, CA 92612 |

THIS BUSINESS LOAN AGREEMENT dated October 7, 2008, is made and executed between EAGLE EYES INVESTMENTS LLC ("Borrower") and Mark One Capital, Inc. ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion, and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

TERM. This Agreement shall be effective as of October 7, 2008, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until November 5, 2013.

CONDITIONS PRECEDENT TO EACH ADVANCE. Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

Loan Documents. Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

Borrower's Authorization. Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

Payment of Fees and Expenses. Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

Representations and Warranties. The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

No Event of Default. There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

REPRESENTATIONS AND WARRANTIES. Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

Organization. Borrower is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Texas. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 4306 South 31st Street, Temple, TX 76502. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

Assumed Business Names. Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: None.

Authorization. Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under: (1) any provision of (a) Borrower's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

Financial Information. Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

Legal Effect. This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

Properties. Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

Hazardous Substances. Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

Litigation and Claims. No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

Taxes. To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by

Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

Annual Statements. As soon as available, but in no event later than one-hundred-twenty (120) days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, prepared by Borrower.

Tax Returns. As soon as available, but in no event later than one-hundred-twenty (120) days after the applicable filing date for the tax reporting period ended, Federal and other governmental tax returns, prepared by Borrower.

Additional Requirements. Borrower to provide rent roll and/or lease roll for subject property on an annual basis.
Borrower to provide all new leases, lease renewals, extensions and modification for the subject property.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, and coverages reasonably acceptable to Lender and by insurance companies authorized to transact business in Texas. BORROWER MAY FURNISH THE INSURANCE REQUIRED BY THIS AGREEMENT WHETHER THROUGH EXISTING POLICIES OWNED OR CONTROLLED BY BORROWER OR THROUGH EQUIVALENT COVERAGE FROM ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN TEXAS. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender Borrower not more often than annually, Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantors named below, on Lender's forms, and in the amounts and under the conditions set forth in those guaranties.

| Names of Guarantors | Amounts |
|---|---|
| Paige C. Boun | Unlimited |
| Sang C. Lin | Unlimited |
| Clara Boun | Unlimited |
| Limel Lin | Unlimited |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer-generated records and computer software programs) for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request. All at Borrower's expense.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements,

assignments, financing statements, instruments, documents, and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures paid by Lender for such purposes will then bear interest at the Note rate from the date paid by Lender to the date of repayment by Borrower. To the extent permitted by applicable law, all such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Borrower will not enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other Loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any Loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after receiving written notice from Lender demanding cure of such default: (1) cure the default within thirty (30) days, or (2) if the cure requires more than thirty (30) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**ASSUMABILITY.** Lender will consider requests for the assumption of this obligation by a third party, such assumption being within the sole discretion of Lender.

**FURTHER ASSURANCES.** Borrower shall execute, acknowledge, and deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements, transfers and assurances as Lender may require from time to time in order to better assure, grant, and convey to Lender the rights intended to be granted, now or in the future, to Lender under this instrument and Loan Documents.

**AGREEMENT TO PROVIDE ADDITIONAL DOCUMENTS.** Borrower agrees to execute and acknowledge such additional documents as may be necessary or desirable in order to carry out the intent and purpose of this Instrument and the other Loan Documents, to confirm or establish the lien hereof, or to correct any clerical errors or legal deficiencies. Without limiting the foregoing Borrower agrees to execute a replacement Note in the event the Note is lost or destroyed and to execute an amended and restate substitute Note to correct any clerical or other errors which may be discovered in the original Note. Failure of Borrower to comply with any request by Lender pursuant to this Section or under Section titled FURTHER ASSURANCES above within ten (10) days after written request by Lender shall constitute a material Event of Default hereunder.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Texas.

**Choice of Venue.** If there is a lawsuit, and if the transaction evidenced by this Agreement occurred in Bell County, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Bell County, State of Texas.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Payment of Interest and Fees.** Notwithstanding any other provision of this Agreement or any provision of any Related Document, Borrower does not agree or intend to pay, and Lender does not agree or intend to charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for the Loan which would in any way or event (including demand, prepayment, or acceleration) cause Lender to contract for, charge or collect more for the Loan than the maximum Lender would be permitted to charge or collect by any applicable federal or Texas state law. Any such excess interest or unauthorized fee will, instead of anything stated to the contrary, be applied first to reduce the unpaid principal balance of the Loan, and when the principal has been paid in full, be refunded to Borrower.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means EAGLE EYES INVESTMENTS LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest,

mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

Environmental Laws. The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

Event of Default. The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

GAAP. The word "GAAP" means generally accepted accounting principles.

Grantor. The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

Guarantor. The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

Guaranty. The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

Hazardous Substances. The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation petroleum and petroleum by-products or any fraction thereof and asbestos.

Indebtedness. The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

Lender. The word "Lender" means Mark One Capital, Inc., its successors and assigns.

Loan. The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

Note. The word "Note" means the Note executed by EAGLE EYES INVESTMENTS LLC in the principal amount of $7,800,000.00 dated October 7, 2008, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

Permitted Liens. The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

Security Agreement. The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

Security Interest. The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law contract, or otherwise.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED OCTOBER 7, 2008.

BORROWER:

EAGLE EYES INVESTMENTS LLC

By: _____
Bane C. Baum, Manager of EAGLE EYES
INVESTMENTS LLC

By: _____
Seng Lin, Manager of EAGLE EYES
INVESTMENTS LLC

LENDER:

MARK ONE CAPITAL, INC.

By: _____
Authorized Signer

David Orman, District Clerk
District Court - Bell County, TX
by _____ , Deputy
Lacey Martindale

# PROMISSORY NOTE
## 270,233-B

| Borrower: | EAGLE EYES INVESTMENTS LLC<br>4305 South 31st Street<br>Temple, TX 76502 | Lender: | Mark One Capital, Inc.<br>Corporate Office<br>19800 MacArthur Blvd.<br>Suite 150<br>Irvine, CA 92612 |
|---|---|---|---|

---

**Principal Amount: $2,900,000.00**                                      Date of Note: October 7, 2008

**PROMISE TO PAY.** EAGLE EYES INVESTMENTS LLC ("Borrower") promises to pay to Mark One Capital, Inc. ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million Nine Hundred Thousand & 00/100 Dollars ($2,900,000.00), together with interest on the unpaid principal balance from October 10, 2008, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 8.370% per annum based on a year of 360 days, until maturity. The interest rate may change under the terms and conditions of the "POST MATURITY RATE" section.

**PAYMENT.** Borrower will pay this loan in 59 regular payments of $18,256.21 each and one irregular last payment estimated at $2,731,700.26. Borrower's first payment is due December 5, 2008, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on November 5, 2013, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to any unpaid collection costs; then to principal; then to any unpaid collection costs; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding, unless such calculation would result in a usurious rate, in which case interest shall be calculated on a per diem basis of a year of 365 or 366 days, as the case may be. All interest payable under this Note is computed using this method.

**PREPAYMENT PREMIUM.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Upon prepayment of this Note, Lender is entitled to the following prepayment premium: Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntarily or as a result of default), except as otherwise required by law. Any prepayment in part or in full is subject to a prepayment fee of five percent (5%) of the outstanding loan balance if said payment is received during the first year and decreasing by one percent (1%) each succeeding year of the loan. The prepayment fee provision expires 90 days prior to the maturity of the Note.

**Waiver of Right to Prepay. By signing below, Borrower waives any right under state law, provided by statute or otherwise, to prepay this Note, in whole or in part, without a prepayment premium (as defined in the Prepayment Fee paragraph). Borrower acknowledges that prepayment of this Note may result in Lender's incurring additional losses, costs, expenses, and liabilities, including, but not limited to, lost revenue and lost profits. Borrower therefore agrees to pay the prepayment premium if any principal amount is prepaid (as defined in the Prepayment Fee paragraph), whether voluntarily or by reason of acceleration of the maturity date on default (including, but not limited to, acceleration on any transfer or conveyance of any right, title, or interest in the mortgaged property giving Lender the right to accelerate the maturity of this Note as provided in the Deed of Trust). BORROWER AGREES THAT LENDER'S WILLINGNESS TO OFFER TO BORROWER THE INTEREST RATE DESCRIBED ABOVE IS SUFFICIENT AND INDEPENDENT CONSIDERATION, GIVEN INDIVIDUAL WEIGHT BY LENDER, FOR THIS WAIVER. BORROWER UNDERSTANDS THAT LENDER WOULD NOT OFFER SUCH AN INTEREST RATE TO BORROWER ABSENT THIS WAIVER.**
_____ Borrower(s) Initial(s). Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest and all other amounts, costs and expenses for which Borrower is responsible under this Note or any other agreement with Lender pertaining to this loan, and in no event will Borrower ever be required to pay any unearned interest. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Mark One Capital, Inc.; Corporate Office; 19800 MacArthur Blvd.; Suite 150; Irvine, CA 92612.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**POST MATURITY RATE.** The Post Maturity Rate on this Note is the lesser of (A) the maximum rate allowed by law or (B) 5.000% per annum above the note rate in effect at the time of final maturity. Borrower will pay interest on all sums due after final maturity, whether by acceleration or otherwise, at that rate.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall

not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.**  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.**  Lender in good faith believes itself insecure.

**Cure Provisions.**  If any default, other than a default in payment is curable, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default:  (1) cures the default within thirty (30) days; or  (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.**  Upon default, Lender may declare the entire indebtedness, including the unpaid principal balance under this Note, all accrued unpaid interest, and all other amounts, costs and expenses for which Borrower is responsible under this Note or any other agreement with Lender pertaining to this loan, immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.**  Lender may hire an attorney to help collect this Note if Borrower does not pay, and Borrower will pay Lender's reasonable attorneys' fees.  Borrower also will pay Lender all other amounts Lender actually incurs as court costs, lawful fees for filing, recording, releasing to any public office any instrument securing this Note; the reasonable cost actually expended for repossessing, storing, preparing for sale, and selling any security; and fees for noting a lien on or transferring a certificate of title to any motor vehicle offered as security for this Note, or premiums or identifiable charges received in connection with the sale of authorized insurance.

**GOVERNING LAW.**  This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions.  This Note has been accepted by Lender in the State of Texas.

**CHOICE OF VENUE.**  If there is a lawsuit, and if the transaction evidenced by this Note occurred in Bell County, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Bell County, State of Texas.

**RIGHT OF SETOFF.**  To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.**  Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A)  a Deed of Trust dated October 7, 2008, to a trustee in favor of Lender on real property located in Bell County, State of Texas.

(B)  an Assignment of All Rents to Lender on real property located in Bell County, State of Texas.

**ASSUMABILITY.**  Lender will consider requests for the assumption of this obligation by a third party, such assumption being within the sole discretion of Lender.

**ADDRESS VERIFICATION.**  An exhibit, titled "Address Verification," is attached to this Note and by this reference is made a part of this Note just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Note.

**SUCCESSOR INTERESTS.**  The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.**  Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency.  Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Mark One Capital, Inc., Corporate Office, 19800 MacArthur Blvd., Suite 150, Irvine, CA  92612.

**GENERAL PROVISIONS.**  NOTICE:  Under no circumstances (and notwithstanding any other provisions of this Note) shall the interest charged, collected, or contracted for on this Note exceed the maximum rate permitted by law.  The term "maximum rate permitted by law" as used in this Note means the greater of  (a) the maximum rate of interest permitted under federal or other law applicable to the indebtedness evidenced by this Note, or  (b) the higher, as of the date of this Note, of the "Weekly Ceiling" or the "Quarterly Ceiling" as referred to in Sections 303.002, 303.003 and 303.006 of the Texas Finance Code.  If any part of this Note cannot be enforced, this fact will not affect the rest of the Note.  Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or at event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Texas (as applicable).  Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower.  The right to accelerate maturity of sums due under this Note does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration.  All sums paid or agreed to be paid to Lender for the use, forbearance or detention of sums due hereunder shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan evidenced by this Note until payment in full so that the rate or amount of interest on account of the loan evidenced hereby does not exceed the applicable usury ceiling.  Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them.  Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, notice of dishonor, notice of intent to accelerate the maturity of this Note, and notice of acceleration of the maturity of this Note.  Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability.  All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral without the consent of or notice to anyone.  All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.  The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

EAGLE EYES INVESTMENTS LLC

By: _____
Paine   C.   Boun,   Manager   of   EAGLE   EYES
INVESTMENTS LLC

By: _____
Seng   C.   Lin,   Manager   of   EAGLE   EYES
INVESTMENTS LLC

LASER PRO Lending, Ver. 5 41 10.005 Copr. Harland Financial Solutions, Inc. 1997, 2005. All Rights Reserved. - SC IT\APPS\CFI\LPL\D20.FC FR-3514 PR-35

## ALLONGE

PROMISSORY NOTE DATE: <u>OCTOBER 3, 2008</u>
BORROWER: <u>EAGLE EYES INVESTMENTS LLC</u>

PAY TO THE ORDER OF BANK OF THE WEST, A
CALIFORNIA BANKING CORPORATION, ITS
SUCCESSORS AND ASSIGNS, WITHOUT
RECOURSE. MARK ONE CAPITAL, INC. HEREBY
ASSIGNS ALL INTEREST IN ALL AGREEMENTS
AND DOCUMENTS RELATED TO THIS NOTE OR
ANY SECURITY PROVIDED THEREFOR,
INCLUDING WITHOUT LIMITATION
ASSIGNMENTS OR SECURITY AGREEMENTS TO
BANK OF THE WEST, A CALIFORNIA BANK
CORPORATION, AND ITS SUCCESSOR AND
ASSIGNS, WITHOUT RECOURSE.

MARK ONE CAPITAL, INC.

BY: _____

ITS: _____

DATED: _____

time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION, JUDGMENTS AND AWARDS.** The following provisions relating to condemnation proceedings, judgments, decrees and awards for injury to the Property are a part of this Deed of Trust:

Proceedings. If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds. To the extent permitted by applicable law, all judgments, decrees and awards for injury or damage to the Property, or any part of the Property, and awards pursuant to proceedings for condemnation of the Property, are hereby absolutely assigned to Lender, and if all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award, judgment or decree shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

Security Agreement. This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

Security Interest. Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

Addresses. The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

Further Assurances. At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

Attorney-in-Fact. If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Grantor a release of this Deed of Trust lien and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. However, it is agreed that the payment of all the Indebtedness and performance of such obligations shall not terminate this Deed of Trust unless the liens and interests created hereby are released by Lender by a proper recordable instrument. Any filing fees required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

Payment Default. Grantor fails to make any payment when due under the Indebtedness.

Other Defaults. Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

Compliance Default. Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

Default on Other Payments. Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

Environmental Default. Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

False Statements. Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Defective Collateralization. This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

Death or Insolvency. The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Breach of Other Agreement. Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

Adverse Change. A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

Insecurity. Lender in good faith believes itself insecure.

Right to Cure. If any default, other than a default in payment is curable, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

RIGHTS AND REMEDIES ON DEFAULT. If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

Election of Remedies. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

Accelerate Indebtedness. Lender may declare the unpaid principal balance of the Indebtedness due and payable. In no event will Grantor be required to pay any unearned interest.

Foreclosure. If Lender invokes the power of sale, Trustee, at the request of Lender, may sell all or any portion of the Property at public auction to the highest bidder for cash at the location within the courthouse designated by the County Commissioners Court, or if no such area has been designated, at the area designated in the notice of sale within the courthouse, between the hours of 10:00 A.M. and 4:00 P.M. on the first Tuesday of any month, after the Trustee or its agent has given notice of the time and place of sale and of the property to be sold as required by the Texas Property Code, as then amended.

UCC Remedies. With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

Collect Rents. As additional security for the payment of the Indebtedness, Grantor hereby absolutely assigns to Lender all Rents as defined in the Definitions section of this Deed of Trust. Until the occurrence of an Event of Default, Grantor is granted a license to collect and retain the Rents; however, upon receipt from Lender of a notice that an Event of Default exists under this Deed of Trust, Lender may terminate Grantor's license, and then Lender, as Grantor's agent, may collect the Rents. In addition, if the Property is vacant, Lender may rent or lease the Property. Lender shall not be liable for its failure to rent the Property, to collect any Rents, or to exercise diligence in any matter relating to the Rents; Lender shall be accountable only for Rents actually received. Lender neither has nor assumes any obligation as lessor or landlord with respect to any occupant of the Property. Rents so received shall be applied by Lender first to the remaining unpaid balance of the Indebtedness, in such order or manner as Lender shall elect, and the residue, if any, shall be paid to the person or persons legally entitled to the residue.

Trustee's Powers. Grantor hereby jointly and severally authorizes and empowers Trustee to sell all or any portion of the Property together or in lots or parcels, as Trustee may deem expedient, and to execute and deliver to the purchaser or purchasers of such Property good and sufficient deeds of conveyance of fee simple title, or of lesser estates, and bills of sale and assignments, with covenants of general warranty made on Grantor's behalf. In no event shall Trustee be required to exhibit, present or display at any such sale any of the Property to be sold at such sale. The Trustee making such sale shall receive the proceeds of the sale and shall apply the same as provided below. Payment of the purchase price to Trustee shall satisfy the liability of the purchaser at any such sale of the Property, and such person shall not be bound to look after the application of the proceeds.

Appoint Receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property. With the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

Tenancy at Sufferance. If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, (2) vacate the Property immediately upon the demand of Lender, or (3) if such tenants refuse to surrender possession of the Property upon demand, the purchaser shall be entitled to institute and maintain the statutory action of forcible entry and detainer and procure a writ of possession thereunder, and Grantor expressly waives all damages sustained by reason thereof.

Other Remedies. Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

Sale of the Property. To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property. Trustee may convey all or any part of the Property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty. Grantor waives all requirements of appraisement, if any. The affidavit of any person having knowledge of the facts to the effect that proper notice as required by the Texas Property Code was given shall be prima facie evidence of the fact that such notice was in fact given. Recitals and statements of fact in any notice or in any conveyance to the purchaser or purchasers of the Property in any foreclosure sale under this Deed of Trust shall be prima facie evidence of the truth of such facts, and all prerequisites and requirements necessary to the validity of any such sale shall be presumed to have been performed. Any sale under the powers granted by this Deed of Trust shall be a perpetual bar against Grantor, Grantor's heirs, successors, assigns and legal representatives.

Proceeds. Trustee shall pay the proceeds of any sale of the Property (a) first, to the expenses of foreclosure, including reasonable fees or charges paid to the Trustee, including but not limited to fees for enforcing the lien, posting for sale, selling, or releasing the Property, (b) then to Lender the full amount of the indebtedness, (c) then to any amount required by law to be paid before payment to Grantor, and (d) the balance, if any, to Grantor.

Attorneys' Fees; Expenses. If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as Lender's attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law. In the event of foreclosure of this Deed of Trust, Lender shall be entitled to recover from Grantor Lender's reasonable attorneys' fees and actual disbursements that Lender necessarily incurs in pursuing such foreclosure.

POWERS AND OBLIGATIONS OF TRUSTEE. The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

Powers of Trustee. In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

Obligations to Notify. Trustee shall not be obligated to notify any other lienholder of the Property of the commencement of a foreclosure proceeding or of the commencement of any other action to which Lender may avail itself as a remedy, except to the extent required by applicable law or by written agreement.

Trustee. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

Substitute Trustee. Lender, at Lender's option, from time to time, and more than once, may appoint in writing a successor or substitute trustee, with or without cause, including the resignation, absence, death, inability, refusal or failure to act of the Trustee. The successor or substitute trustee may be appointed without ever requiring the resignation of the former trustee and without any formality except for the execution and acknowledgment of the appointment by the beneficiary of this Deed of Trust. The successor or substitute trustee shall then succeed to all rights, obligations, and duties of the Trustee. This appointment may be made on Lender's behalf by the President, any Vice President, Secretary, or Cashier of Lender.

NOTICES. Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Deed of Trust:

Amendments. This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Annual Reports. If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

Caption Headings. Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

Merger. There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law,

the laws of the State of Texas without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Texas.

Choice of Venue. If there is a lawsuit, and if the transaction evidenced by this Deed of Trust occurred in Bell County, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Bell County, State of Texas.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Severability. If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

Successors and Assigns. Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

Time is of the Essence. Time is of the essence in the performance of this Deed of Trust.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

Beneficiary. The word "Beneficiary" means Mark One Capital, Inc., and its successors and assigns.

Borrower. The word "Borrower" means EAGLE EYES INVESTMENTS LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Deed of Trust. The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

Default. The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

Environmental Laws. The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

Event of Default. The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

Grantor. The word "Grantor" means EAGLE EYES INVESTMENTS LLC.

Guarantor. The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

Guaranty. The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

Hazardous Substances. The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Improvements. The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

Indebtedness. The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

Lender. The word "Lender" means Mark One Capital, Inc., its successors and assigns.

Note. The word "Note" means the promissory note dated October 7, 2008, in the original principal amount of $2,900,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

Personal Property. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter

owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Stewart National Title North Texas, whose address is 1717 Main Street, #3500, Dallas, TX 7520? and any substitute or successor trustees.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

EAGLE EYES INVESTMENTS LLC

By: _____
   Paine  C.  Boun,  Manager  of  EAGLE  EYES
   INVESTMENTS LLC

By: _____
   Seng  C.  Lin,  Manager  of  EAGLE  EYES
   INVESTMENTS LLC

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _____          )
                               ) SS
COUNTY OF _____          )

This instrument was acknowledged before me on _____, 20_____ by Paine C. Boun, Manager of EAGLE EYES INVESTMENTS LLC and Seng C. Lin, Manager of EAGLE EYES INVESTMENTS LLC, members on behalf of EAGLE EYES INVESTMENTS LLC, a limited liability company.

_____
Notary Public, State of Texas

LASER PRO  Lending,  Ver.  5.41.20.001     Copr.  Harland  Financial  Solutions,  Inc.  1997,  2008.     All  Rights  Reserved.     TX
N:\APPS\CFI\LPL\G01.FC  TR-2554  PR-29

NOTARY ACKNOWLEDGMENT

STATE OF CALIFORNIA            }
                              }
COUNTY OF _Orange_            }

On _October 8_ , 2008, before me, _Elite Yeeyun Keung_, a Notary
Public, personally appeared, _Paine C. Bown and Seng C. Lin_                ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument,
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____            (Seal)

ELITE YEEYAN KEUNG
Commission # 1638771
Notary Public - California
Orange County
My Comm. Expires Jan 17, 2010

## EXHIBIT "A"

Field notes for an 8.005 acre tract in Temple, Bell County Texas, out of and a part of the MAXIMO MORENO SURVEY, ABSTRACT #14, and the tract herein described being all of Lot 1, Block 1, Westward LTD Subdivision, a dedicated subdivision to the City of Temple, Bell County, Texas, according to the plat of record in Cabinet C, Slide 204-B, Plat Records, Bell County Texas, said 8.005 acre tract being more fully described as follows:

Beginning at an iron rod found in the East line of South 31st Street (FM 1741) for the Northwest corner of this tract, the Northwest corner of the said Lot 1, Block 1, Westward LTD Subdivision, and the most Westerly Southwest corner of a certain 30.8334 acre tract described in a deed to H. E. Butt Grocery Company of record in Volume 3728, page 397, Deed Records, Bell County, Texas.

Thence: South 74° 03' 41'"East, 480.47 feet, an iron rod found and South 74° 03' 41'" East, 477.72 feet with the North line of this tract, the North line of the said Lot 1, Block 1, Westward LTD Subdivision, and with the South line of the aforementioned 30.8334 acre tract to an iron rod found for the Northeast corner of this tract, the Northeast corner of the said Lot 1 Block 1, Westward LTD Subdivision, an Ell corner in the West line of the aforementioned 30.8334 acre tract, and the Northwest corner of a certain 3.667 acre drainage easement to the City of Temple, Bell County, Texas, described in Volume 4088, page 491, Deed Records, Bell County, Texas.

Thence: South 15° 45' 01'" West, 361.50 feet with the East line of this tract, the East line of the said Lot 1, Block 1 Westward LTD, the West line of the aforementioned 30.8334 acre tract, being the West line of the above mentioned 3.667 acre drainage easement, and with the West line of a certain 0.248 acre Right-of-Way Deed described in a deed to the City of Temple, Bell County, Texas, of record in Volume 4066, page 309 Deed Records, Bell County, Texas, to an iron rod found in the North line of the remainder of Block 1, Spanish Southwest, for the Southeast corner of this tract, the Southeast corner of the said Lot 1, Block 1, Westward LTD Subdivision, and the most Southerly Southwest corner of the aforementioned 30.8334 acre tract, being also the Southwest corner of the aforementioned 0.248 acre tract.

Thence: North 74° 15' 05'" West, 484.20 feet, an iron rod found and North 74° 01' 57'" West, 480.78 feet with the South line of this tract, the South line of the said Lot 1, Block 1, Westward LTD Subdivision, the North line of the aforementioned remainder of Block 1, Spanish Southwest, and with the North line of Grady Subdivision, a dedicated subdivision to the City of Temple, Bell County, Texas according to the plat of record in Cabinet C Slide 242-D, Plat Records, Bell County, Texas, to an iron rod found in the East line South 31st Street for the Southwest corner of this tract, the Southwest corner of the said Lot 1 Block 1, Westward LTD Subdivision, and the Northwest corner of Grady Subdivision

Thence: North 16° 49' 23'" East, 362.91 feet with the West line of this tract, the West line of the said Lot 1, Block 1 Westward LTD Subdivision and with the East line of South 31st Street to the place of BEGINNING containing 8.005 acres of land.

All bearings are grid bearings based on Texas Plane Coordinates, NAD83, ZONE 4203, and City of Temple Monument #151, 10,360,421.12 North and 3,223,026.41 East, Convergence 1deg 31' 27'".

4105 South 31st Street

Bell County
Shelley Coston
County Clerk
Belton, Texas 76513

Instrument Number: 2008-00042103

As

Recorded On: October 15, 2008                    Recordings

Parties: EAGLE EYES INVESTMENTS LLC                      Billable Pages: 10

To      MARK ONE CAPITAL INC                              Number of Pages: 11

Comment:

( Parties listed above are for Clerks reference only )

** Examined and Charged as Follows: **

Recordings                        50.00

Total Recording:              50.00

*********** DO NOT REMOVE THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

File Information:                                 Record and Return To:
Document Number: 2008-00042103
Receipt Number: 40267                            MONTEITH ABSTRACT & TITLE CO
Recorded Date/Time: October 15, 2008 01:38:15P   108 S EAST ST
                                                 BELTON TX 76513
User / Station: A Tammy - Indexing Station 1



I hereby certify that this instrument was filed on the date and time stamped hereon and was duly recorded in the Real Property
Records in Bell County, Texas

Shelley Coston
Bell County Clerk

Sheila Norman, District Clerk
District Court - Bell County, TX
by_____, Deputy
Lacey Martindale

RECORDATION REQUESTED BY:
Mark One Capital, Inc.
Corporate Office
19800 MacArthur Blvd.
Suite 150
Irvine, CA 92612

WHEN RECORDED MAIL TO:
Bank of the West
SBA Direct Lending Division
1400 River Park Dr. Stulte 200
Sacramento, CA 95815

**270,233-B**

RP 10/15/2008



Doc# 00016210.4

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

## ASSIGNMENT OF RENTS

THIS ASSIGNMENT OF RENTS dated October 7, 2008, is made and executed between EAGLE EYES INVESTMENTS LLC, whose address is 4305 South 31st Street, Temple, TX 76502 (referred to below as "Grantor") and Mark One Capital, Inc., whose address is 19800 MacArthur Blvd., Suite 150, Irvine, CA 92612 (referred to below as "Lender").

**ASSIGNMENT.** For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Bell County, State of Texas:

See Exhibit "A", which is attached to this Assignment and made a part of this Assignment as if fully set forth herein.

The Property or its address is commonly known as 4305 South 31st Street, Temple, TX 76502. The Property tax identification number is 231988.

THIS ASSIGNMENT IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS. THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that:

**Ownership.** Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Assign.** Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

**No Prior Assignment.** Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

**No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

**LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.** Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers and authority:

**Notice to Tenants.** Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

**Enter the Property.** Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

**Maintain the Property.** Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.** Lender may do any and all things to execute and comply with the laws of the State of Texas and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.** Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as

MONTEITH ABSTRACT & TITLE COMPANY
P.O. BOX 178
BELTON TX 76513 ... ) . C. & A

Lender may deem appropriate.

Employ Agents. Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

Other Acts. Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

No Requirement to Act. Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

APPLICATION OF RENTS. All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

FULL PERFORMANCE. If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

LENDER'S EXPENDITURES. If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Assignment or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Assignment or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Rents or the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures paid by Lender for such purposes will then bear interest at the Note rate from the date paid by Lender to the date of repayment by Grantor. To the extent permitted by applicable law, all such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Assignment also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

DEFAULT. Each of the following, at Lender's option, shall constitute an Event of Default under this Assignment:

Payment Default. Grantor fails to make any payment when due under the Indebtedness.

Other Defaults. Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Assignment or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

Default on Other Payments. Failure of Grantor within the time required by this Assignment to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

Environmental Default. Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

False Statements. Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Assignment or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Defective Collateralization. This Assignment or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

Death or Insolvency. The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against the Rents or any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Property Damage or Loss. The Property is lost, stolen, substantially damaged, sold, or borrowed against.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

Adverse Change. A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

Insecurity. Lender in good faith believes itself insecure.

Cure Provisions. If any default, other than a default in payment is curable, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

RIGHTS AND REMEDIES ON DEFAULT. Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one

or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment premium that Grantor would be required to pay.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Assignment, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable as Lender's attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law. In the event of foreclosure of this Assignment, Lender shall be entitled to recover from Grantor Lender's reasonable attorneys' fees and actual disbursements that Lender necessarily incurs in pursuing such foreclosure.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Assignment:

**Amendments.** This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of or amendment to this Assignment shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Caption Headings.** Caption headings in this Assignment are for convenience purposes only and are not to be used to interpret or define the provisions of this Assignment.

**Governing Law.** This Assignment will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Assignment has been accepted by Lender in the State of Texas.

**Choice of Venue.** If there is a lawsuit, and if the transaction evidenced by this Assignment occurred in Bell County, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Bell County, State of Texas.

**Merger.** There shall be no merger of the interest or estate created by this assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.** (1) In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require. (2) If more than one person signs this Assignment as "Grantor," the obligations of each Grantor are joint and several. This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors. If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Assignment unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Assignment shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Assignment. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any party may change its address for notices under this Assignment by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Powers of Attorney.** The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of

Loan No: 4790042196

## ASSIGNMENT OF RENTS
## (Continued)

Page 4

security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Assignment to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Assignment. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Assignment shall not affect the legality, validity or enforceability of any other provision of this Assignment.

**Successors and Assigns.** Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Assignment.

**Waiver of Right of Redemption.** NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS ASSIGNMENT, GRANTOR HEREBY WAIVES ANY AND ALL RIGHTS OF REDEMPTION FROM SALE UNDER ANY ORDER OR JUDGMENT OF FORECLOSURE ON GRANTOR'S BEHALF AND ON BEHALF OF EACH AND EVERY PERSON, EXCEPT JUDGMENT CREDITORS OF GRANTOR, ACQUIRING ANY INTEREST IN OR TITLE TO THE PROPERTY SUBSEQUENT TO THE DATE OF THIS ASSIGNMENT.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Assignment. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Assignment.** The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

**Borrower.** The word "Borrower" means EAGLE EYES INVESTMENTS LLC.

**Default.** The word "Default" means the Default set forth in this Assignment in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Assignment in the default section of this Assignment.

**Grantor.** The word "Grantor" means EAGLE EYES INVESTMENTS LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, together with interest on such amounts as provided in this Assignment.

**Lender.** The word "Lender" means Mark One Capital, Inc., its successors and assigns.

**Note.** The word "Note" means the promissory note dated October 7, 2008, in the original principal amount of $2,900,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT, AND NOT PERSONALLY BUT AS AN AUTHORIZED SIGNER, HAS CAUSED THIS ASSIGNMENT TO BE SIGNED AND EXECUTED ON BEHALF OF GRANTOR ON OCTOBER 7, 2008.

GRANTOR:

EAGLE EYES INVESTMENTS LLC

By: _____
Paine   C.   Boun,   Manager   of   EAGLE   EYES
INVESTMENTS LLC

By: _____
Seng   S.   Lin,   Manager   of   EAGLE   EYES
INVESTMENTS LLC

## ASSIGNMENT OF RENTS
### (Continued)

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT



STATE OF _____ }
                                   } SS
COUNTY OF _____ }

This instrument was acknowledged before me on _____, 20_____ by Paine C. Boun, Manager of EAGLE EYES INVESTMENTS LLC and Seng C. Lin, Manager of EAGLE EYES INVESTMENTS LLC, members on behalf of EAGLE EYES INVESTMENTS LLC, a limited liability company.

_____
Notary Public, State of Texas

NOTARY ACKNOWLEDGMENT

STATE OF CALIFORNIA                    }
                                      }
COUNTY OF _Orange_                    }

On _October 8_, 2008, before me, _Elite Yeeyan Keung_, a Notary Public, personally appeared, _Paine C. Boun and Seng C. Lin_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____          (Seal)

ELITE YEEYAN KEUNG
Commission # 1638771
Notary Public - California
Orange County
My Comm. Expires Jan 17, 2010

## EXHIBIT "A"

Field notes for an 8.005 acre tract in Temple, Bell County Texas, out of and a part of the MAXIMO MORENO SURVEY, ABSTRACT #14, and the tract herein described being all of Lot 1, Block 1, Westward LTD Subdivision, a dedicated subdivision to the City of Temple, Bell County, Texas, according to the plat of record in Cabinet C, Slide 204-B, Plat Records, Bell County Texas, said 8.005 acre tract being more fully described as follows:

Beginning at an iron rod found in the East line of South 31st Street (FM 1741) for the Northwest corner of this tract, the Northwest corner of the said Lot 1, Block 1, Westward LTD Subdivision, and the most Westerly Southwest corner of a certain 30.8334 acre tract described in a deed to H. E. Butt Grocery Company of record in Volume 3728, page 397, Deed Records, Bell County, Texas.

Thence: South 74° 03' 41'"East, 480.47 feet, an iron rod found and South 74° 03' 41'" East, 477.72 feet with the North line of this tract, the North line of the said Lot 1, Block 1, Westward LTD Subdivision, and with the South line of the aforementioned 30.8334 acre tract to an iron rod found for the Northeast corner of this tract, the Northeast corner of the said Lot 1 Block 1, Westward LTD Subdivision, an Ell corner in the West line of the aforementioned 30.8334 acre tract, and the Northwest corner of a certain 3.667 acre drainage easement to the City of Temple, Bell County, Texas, described in Volume 4088, page 491, Deed Records, Bell County, Texas.

Thence: South 15° 45' 01'" West, 361.50 feet with the East line of this tract, the East line of the said Lot 1, Block 1 Westward LTD, the West line of the aforementioned 30.8334 acre tract, being the West line of the above mentioned 3.667 acre drainage easement, and with the West line of a certain 0.248 acre Right-of-Way Deed described in a deed to the City of Temple, Bell County, Texas, of record in Volume 4066, page 309 Deed Records, Bell County, Texas, to an iron rod found in the North line of the remainder of Block 1, Spanish Southwest, for the Southeast corner of this tract, the Southeast corner of the said Lot 1, Block 1, Westward LTD Subdivision, and the most Southerly Southwest corner of the aforementioned 30.8334 acre tract, being also the Southwest corner of the aforementioned 0.248 acre tract.

Thence: North 74° 15' 05'" West, 484.20 feet, an iron rod found and North 74° 01' 57'" West, 480.78 feet with the South line of this tract, the South line of the said Lot 1, Block 1, Westward LTD Subdivision, the North line of the aforementioned remainder of Block 1, Spanish Southwest, and with the North line of Grady Subdivision, a dedicated subdivision to the City of Temple, Bell County, Texas according to the plat of record in Cabinet C Slide 242-D, Plat Records, Bell County, Texas, to an iron rod found in the East line South 31st Street for the Southwest corner of this tract, the Southwest corner of the said Lot 1 Block 1, Westward LTD Subdivision, and the Northwest corner of Grady Subdivision

Thence: North 16° 49' 23'" East, 362.91 feet with the West line of this tract, the West line of the said Lot 1, Block 1 Westward LTD Subdivision and with the East line of South 31st Street to the place of BEGINNING containing 8.005 acres of land.

All bearings are grid bearings based on Texas Plane Coordinates, NAD83, ZONE 4203, and City of Temple Monument #151,10,360,421.12 North and 3,223,026.41 East, Convergence 1deg 31' 27'".

4105 South 31st Street

Case 6:14-cv-00206-WSS   Document 1-1   Filed 06/02/14   Page 38 of 73

Shelia Norman, District Clerk
District Court - Bell County, TX
By _____ , Deputy
Lacey Martindale

| Borrower: | EAGLE EYES INVESTMENTS LLC<br>4305 South 31st Street<br>Temple, TX 76502 | 270,233-B | Lender: | Mark One Capital, Inc.<br>Corporate Office<br>19800 MacArthur Blvd.<br>Suite 150<br>Irvine, CA 92612 |

| Guarantor: | Seng C. Lin<br>1032 S. Hidalgo Ave<br>Alhambra, CA 91801 |

CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE. For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the indebtedness or against any collateral securing the indebtedness, this Guaranty or any other guaranty of the indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

INDEBTEDNESS. The word "indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, Lender's reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether; voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several, evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guarantees, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

CONTINUING GUARANTY. THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

DURATION OF GUARANTY. This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all of the indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new indebtedness created after actual receipt by Lender of Guarantor's written revocation and Lender's written acknowledgment of receipt. For this purpose and without limitation, the term "new indebtedness" does not include the indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new indebtedness" does not include all or part of the indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the indebtedness. This Guaranty shall bind Guarantor's estate as to the indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the indebtedness remains unpaid and even though the indebtedness may from time to time be zero dollars ($0.00).

GUARANTOR'S AUTHORIZATION TO LENDER. Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening or otherwise affecting Guarantor's liability under this Guaranty, from time to time: (A)  prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times, the time for payment or other terms of the indebtedness, or any part of the indebtedness, including increases and decreases of the rate of interest on the indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

GUARANTOR'S REPRESENTATIONS AND WARRANTIES. Guarantor represents and warrants to Lender that (A)  no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has the full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

GUARANTOR'S FINANCIAL STATEMENTS. Guarantor agrees to furnish Lender with the following:

Tax Returns. As soon as available, but in no event later than one-hundred-twenty (120) days after the applicable filing date for the tax reporting period ended, Federal and other governmental tax returns, prepared by a tax professional satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

GUARANTOR'S WAIVERS. Except as prohibited by applicable law, Guarantor waives any right to require Lender (A)  to continue lending money or to extend other credit to Borrower; (B)  to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower,

Lender, any surety, endorser, or other guarantor in connection with the creation of new or additional loans or obligations; (C) to resort to payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor waives all rights of Guarantor under Chapter 34 of the Texas Business and Commerce Code. Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS. Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR. Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Guaranty:

Amendments. This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Attorneys' Fees; Expenses. Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

Caption Headings. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions.

Choice of Venue. If there is a lawsuit, and if the transaction evidenced by this Guaranty occurred in Bell County, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Bell County, State of Texas.

Integration. Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

Interpretation. In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one party, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

Notices. Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Successors and Assigns. Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically

# COMMERCIAL GUARANTY
## (Continued)

- Loan No: 4790042196                                                                      Page 3

stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

Borrower. The word "Borrower" means EAGLE EYES INVESTMENTS LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

GAAP. The word "GAAP" means generally accepted accounting principles.

Guarantor. The word "Guarantor" means everyone signing this Guaranty, including without limitation Seng C. Lin, and in each case, any signer's successors and assigns.

Guaranty. The word "Guaranty" means this guaranty from Guarantor to Lender.

Indebtedness. The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

Lender. The word "Lender" means Mark One Capital, Inc., its successors and assigns.

Note. The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED OCTOBER 7, 2008.

GUARANTOR:

X _____
Seng C. Lin

## ADDENDUM TO COMMERCIAL GUARANTY

This ADDENDUM TO COMMERCIAL GUARANTY (the "Addendum") is attached to and made a part of that certain Commercial Guaranty made by Seng C. Lin ("Guarantor") in favor of Mark One Capital, Inc. (the "Guaranty"). All capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Guaranty.

In consideration of good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, the undersigned hereby agree as follow:

1.        The following terms in "Definitions" Section of the Guaranty hereby are inserted or amended to read as follows:

(i)       Business Loan Agreement. The word "Business Loan Agreement" means the Business Loan Agreement of even date herewith between Borrower and Lender.

(ii)      Notes. The word "Notes" means the Business Loan Agreement and any promissory notes evidencing amounts outstanding from Borrower to Lender under the Business Loan Agreement, together with all renewals of, extensions of, refinancings of, consolidations of and substitutions for the Business Loan Agreement and any such notes.

2.        Notwithstanding anything contained in the Guaranty, in the Business Loan Agreement, in the Notes or in any of the Related Documents to the contrary, this Guaranty shall only be a guaranty of amounts outstanding under the Business Loan Agreement, the Notes and the Related Documents, including, without limitation, all principal and interest outstanding there under and all fees, costs of collection, advances and other amounts payable to Lender under the Business Loan Agreement, the Notes and Related Documents, but shall not be deemed a guaranty of any other obligations of Borrower to Lender.

3.        In the event of a conflict between the terms of the Guaranty and the terms of this Addendum, the terms of this Addendum shall control.

IN WITNESS WHEREOF, the undersigned have executed this Addendum, or have caused this Addendum to be executed, as of the 8ᵗʰ day of October , 2008.

LENDER:

Mark One Capital, Inc.

By:_____
Name:_____
Title:_____

GUARANTOR:

_____
Seng C. Lin

## ADDENDUM TO COMMERCIAL GUARANTY

This ADDENDUM TO COMMERCIAL GUARANTY (the "Addendum") is attached to and made a part of that certain Commercial Guaranty made by Seng C. Lin ("Guarantor") in favor of Mark One Capital, Inc. (the "Guaranty"). All capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Guaranty.

In consideration of good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, the undersigned hereby agree as follow:

1.        The following terms in "Definitions" Section of the Guaranty hereby are inserted or amended to read as follows:

(i)        Business Loan Agreement.  The word "Business Loan Agreement" means the Business Loan Agreement of even date herewith between Borrower and Lender.

(ii)        Notes.  The word "Notes" means the Business Loan Agreement and any promissory notes evidencing amounts outstanding from Borrower to Lender under the Business Loan Agreement, together with all renewals of, extensions of, refinancings of, consolidations of and substitutions for the Business Loan Agreement and any such notes.

2.        Notwithstanding anything contained in the Guaranty, in the Business Loan Agreement, in the Notes or in any of the Related Documents to the contrary, this Guaranty shall only be a guaranty of amounts outstanding under the Business Loan Agreement, the Notes and the Related Documents, including, without limitation, all principal and interest outstanding there under and all fees, costs of collection, advances and other amounts payable to Lender under the Business Loan Agreement, the Notes and Related Documents, but shall not be deemed a guaranty of any other obligations of Borrower to Lender.

3.        In the event of a conflict between the terms of the Guaranty and the terms of this Addendum, the terms of this Addendum shall control.

IN WITNESS WHEREOF, the undersigned have executed this Addendum, or have caused this Addendum to be executed, as of the ___ day of _____, 2008.

LENDER:

Mark One Capital, Inc.

By: _____
Name: BRIAN HELLE
Title: EXECUTIVE DIRECTOR

GUARANTOR:

_____
Seng C. Lin

**COMMERCIAL GUARANTY**

| Borrower: | EAGLE EYES INVESTMENTS LLC<br>4305 South 31st Street<br>Temple, TX 76502 | 270,233-B | Mark One Capital, Inc.<br>Corporate Office<br>18500 MacArthur Blvd.<br>Suite 750<br>Irvine, CA 92612 |
|---|---|---|---|

| Guarantor: | Lionel Un<br>611 W. Newby Avenue<br>San Gabriel, CA 91776 |
|---|---|

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents Under this Guaranty. Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, Lender's reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other undiminished guaranties.

**CONTINUING GUARANTY. THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.**

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation and Lender's written acknowledgment of receipt. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: Incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening or otherwise affecting Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the indebtedness or any part of the indebtedness, including increases and decreases of the rate of interest on the indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

Tax Returns. As soon as available, but in no event later than one-hundred-twenty (120) days after the applicable filing date for the tax reporting period ended, Federal and other governmental tax returns, prepared by a tax professional satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower,

Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor waives all rights of Guarantor under Chapter 34 of the Texas Business and Commerce Code. Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.  Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.  Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent.  Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower.  In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness.  Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness.  If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender.  Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

MISCELLANEOUS PROVISIONS.  The following miscellaneous provisions are a part of this Guaranty:

Amendments.  This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty.  No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Attorneys' Fees; Expenses.  Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty.  Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement.  Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

Caption Headings.  Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

Governing Law.  This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions.

Choice of Venue.  If there is a lawsuit, and if the transaction evidenced by this Guaranty occurred in Bell County, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Bell County, State of Texas.

Integration.  Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty.  Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

Interpretation.  In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them.  The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them.  If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced.  Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable.  If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

Notices.  Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty.  All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY."  Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address.  Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

No Waiver by Lender.  Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty.  No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Successors and Assigns.  Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

DEFINITIONS.  The following capitalized words and terms shall have the following meanings when used in this Guaranty.  Unless specifically

COMMERCIAL GUARANTY
(Continued)

stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code.

Borrower.  The word "Borrower" means EAGLE EYES INVESTMENTS LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

GAAP.  The word "GAAP" means generally accepted accounting principles.

Guarantor.  The word "Guarantor" means everyone signing this Guaranty, including without limitation Limel Lin, and in each case, any signer's successors and assigns.

Guaranty.  The word "Guaranty" means this guaranty from Guarantor to Lender.

Indebtedness.  The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

Lender.  The word "Lender" means Mark One Capital, Inc., its successors and assigns.

Note.  The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

Related Documents.  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS.  IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY".  NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.  THIS GUARANTY IS DATED OCTOBER 7, 2008.

GUARANTOR:

X _____
Limel Lin

LASER PRO Lending, Ver. 5.41.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2008.  All Rights Reserved.  - TX  S:\CFI\LPL\E20.FC  TR-3524  PR-26

## ADDENDUM TO COMMERCIAL GUARANTY

This ADDENDUM TO COMMERCIAL GUARANTY (the "Addendum") is attached to and made a part of that certain Commercial Guaranty made by Limei Lin ("Guarantor") in favor of Mark One Capital, Inc. (the "Guaranty"). All capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Guaranty.

In consideration of good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, the undersigned hereby agree as follow:

1.      The following terms in "Definitions" Section of the Guaranty hereby are inserted or amended to read as follows:

(i)      Business Loan Agreement.  The word "Business Loan Agreement" means the Business Loan Agreement of even date herewith between Borrower and Lender.

(ii)     Notes. The word "Notes" means the Business Loan Agreement and any promissory notes evidencing amounts outstanding from Borrower to Lender under the Business Loan Agreement, together with all renewals of, extensions of, refinancings of, consolidations of and substitutions for the Business Loan Agreement and any such notes.

2.      Notwithstanding anything contained in the Guaranty, in the Business Loan Agreement, in the Notes or in any of the Related Documents to the contrary, this Guaranty shall only be a guaranty of amounts outstanding under the Business Loan Agreement, the Notes and the Related Documents, including, without limitation, all principal and interest outstanding there under and all fees, costs of collection, advances and other amounts payable to Lender under the Business Loan Agreement, the Notes and Related Documents, but shall not be deemed a guaranty of any other obligations of Borrower to Lender.

3.      In the event of a conflict between the terms of the Guaranty and the terms of this Addendum, the terms of this Addendum shall control.

IN WITNESS WHEREOF, the undersigned have executed this Addendum, or have caused this Addendum to be executed, as of the 2M day of __October__ , 2008.

LENDER:

Mark One Capital, Inc.

By:_____
Name:_____
Title:_____

GUARANTOR:

_Lin Limei_

Limei Lin

## ADDENDUM TO COMMERCIAL GUARANTY

This ADDENDUM TO COMMERCIAL GUARANTY (the "Addendum") is attached to and made a part of that certain Commercial Guaranty made by Limei Lin ("Guarantor") in favor of Mark One Capital, Inc. (the "Guaranty"). All capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Guaranty.

In consideration of good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, the undersigned hereby agree as follow:

1.         The following terms in "Definitions" Section of the Guaranty hereby are inserted or amended to read as follows:

(i)        Business Loan Agreement.  The word "Business Loan Agreement" means the Business Loan Agreement of even date herewith between Borrower and Lender.

(ii)       Notes.  The word "Notes" means the Business Loan Agreement and any promissory notes evidencing amounts outstanding from Lender to Lender under the Business Loan Agreement, together with all renewals of, extensions of, refinancings of, consolidations of and substitutions for the Business Loan Agreement and any such notes.

2.         Notwithstanding anything contained in the Guaranty, in the Business Loan Agreement, in the Notes or in any of the Related Documents to the contrary, this Guaranty shall only be a guaranty of amounts outstanding under the Business Loan Agreement, the Notes and the Related Documents, including, without limitation, all principal and interest outstanding there under and all fees, costs of collection, advances and other amounts payable to Lender under the Business Loan Agreement, the Notes and Related Documents, but shall not be deemed a guaranty of any other obligations of Borrower to Lender.

3.         In the event of a conflict between the terms of the Guaranty and the terms of this Addendum, the terms of this Addendum shall control.

IN WITNESS WHEREOF, the undersigned have executed this Addendum, or have caused this Addendum to be executed, as of the ___ day of _____, 2008.

LENDER:

Mark One Capital, Inc.

By: _____
Name: BRIAN HELLER
Title: EXECUTIVE DIRECTOR

GUARANTOR:

_____
Limei Lin

COMMERCIAL GUARANTY
Sheila Norman, District Clerk
District Court - Bell County, TX
by_____, Deputy
Lacey Martindale

| Borrower: | EAGLE EYES INVESTMENTS LLC<br>4305 South 31st Street<br>Temple, TX 76502 | 270,233-B | Lender: | Mark One Capital, Inc.<br>Corporate Office<br>19800 MacArthur Blvd.<br>Suite 150<br>Irvine, CA 92612 |
|---|---|---|---|---|

**Guarantor:** Pehe C. Boun
611 W. Newby Avenue
San Gabriel, CA 91776

CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE. For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without setoff or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

INDEBTEDNESS. The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, Lender's reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any of them of future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

CONTINUING GUARANTY. THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

DURATION OF GUARANTY. This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation and Lender's written acknowledgment of receipt. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

GUARANTOR'S AUTHORIZATION TO LENDER. Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening or otherwise affecting Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors or any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

GUARANTOR'S REPRESENTATIONS AND WARRANTIES. Guarantor represents and warrants to Lender that: (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

GUARANTOR'S FINANCIAL STATEMENTS. Guarantor agrees to furnish Lender with the following:

Tax Returns. As soon as available, but in no event later than one-hundred twenty (120) days after the applicable filing date for the tax reporting period ended, Federal and state governmental tax returns, prepared by a tax professional satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

GUARANTOR'S WAIVERS. Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower,

Lender, any surety, endorser, or other guarantor in connection with the indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor waives all rights of Guarantor under Chapter 34 of the Texas Business and Commerce Code. Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the indebtedness; (D) any right or claim discharge of the indebtedness on the basis of unjustified impairment of any collateral for the indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower, in the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions.

**Choice of Venue.** If there is a lawsuit, and if the transaction evidenced by this Guaranty occurred in Bell County, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Bell County, State of Texas.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically

stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

Borrower. The word "Borrower" means EAGLE EYES INVESTMENTS LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

GAAP. The word "GAAP" means generally accepted accounting principles.

Guarantor. The word "Guarantor" means everyone signing this Guaranty, including without limitation Paine C. Boun, and in each case, any signer's successors and assigns.

Guaranty. The word "Guaranty" means this guaranty from Guarantor to Lender.

Indebtedness. The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

Lender. The word "Lender" means Mark One Capital, Inc., its successors and assigns.

Note. The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED OCTOBER 7, 2008.

GUARANTOR:

X _____
Paris C. Boun

## ADDENDUM TO COMMERCIAL GUARANTY

This ADDENDUM TO COMMERCIAL GUARANTY (the "Addendum") is attached to and made a part of that certain Commercial Guaranty made by Paine C. Boun ("Guarantor") in favor of Mark One Capital, Inc. (the "Guaranty"). All capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Guaranty.

In consideration of good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, the undersigned hereby agree as follow:

1.      The following terms in "Definitions" Section of the Guaranty hereby are inserted or amended to read as follows:

(i)     Business Loan Agreement. The word "Business Loan Agreement" means the Business Loan Agreement of even date herewith between Borrower and Lender.

(ii)    Notes. The word "Notes" means the Business Loan Agreement and any promissory notes evidencing amounts outstanding from Borrower to Lender under the Business Loan Agreement, together with all renewals of, extensions of, refinancings of, consolidations of and substitutions for the Business Loan Agreement and any such notes.

2.      Notwithstanding anything contained in the Guaranty, in the Business Loan Agreement, in the Notes or in any of the Related Documents to the contrary, this Guaranty shall only be a guaranty of amounts outstanding under the Business Loan Agreement, the Notes and the Related Documents, including, without limitation, all principal and interest outstanding there under and all fees, costs of collection, advances and other amounts payable to Lender under the Business Loan Agreement, the Notes and Related Documents, but shall not be deemed a guaranty of any other obligations of Borrower to Lender.

3.      In the event of a conflict between the terms of the Guaranty and the terms of this Addendum, the terms of this Addendum shall control.

IN WITNESS WHEREOF, the undersigned have executed this Addendum, or have caused this Addendum to be executed, as of the 6th day of _October____, 2008.

LENDER:

Mark One Capital, Inc.

By:_____
Name:_____
Title:_____

GUARANTOR:

_____
Paine C. Boun

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### ADDENDUM TO COMMERCIAL GUARANTY

This ADDENDUM TO COMMERCIAL GUARANTY (the "Addendum") is attached to and made a part of that certain Commercial Guaranty made by Paine C. Boun ("Guarantor") in favor of Mark One Capital, Inc. (the "Guaranty"). All capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Guaranty.

In consideration of good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, the undersigned hereby agree as follow:

1.        The following terms in "Definitions" Section of the Guaranty hereby are inserted or amended to read as follows:

(i)      Business Loan Agreement. The word "Business Loan Agreement" means the Business Loan Agreement of even date herewith between Borrower and Lender.

(ii)     Notes. The word "Notes" means the Business Loan Agreement and any promissory notes evidencing amounts outstanding from Borrower to Lender under the Business Loan Agreement, together with all renewals of, extensions of, refinancings of, consolidations of and substitutions for the Business Loan Agreement and any such notes.

2.        Notwithstanding anything contained in the Guaranty, in the Business Loan Agreement, in the Notes or in any of the Related Documents to the contrary, this Guaranty shall only be a guaranty of amounts outstanding under the Business Loan Agreement, the Notes and the Related Documents, including, without limitation, all principal and interest outstanding there under and all fees, costs of collection, advances and other amounts payable to Lender under the Business Loan Agreement, the Notes and Related Documents, but shall not be deemed a guaranty of any other obligations of Borrower to Lender.

3.        In the event of a conflict between the terms of the Guaranty and the terms of this Addendum, the terms of this Addendum shall control.

IN WITNESS WHEREOF, the undersigned have executed this Addendum, or have caused this Addendum to be executed, as of the ___ day of _____, 2008.

LENDER:

Mark One Capital, Inc.

By:

Name: BRIAN HELLO

Title: EXECUTIVE DIRECTOR

GUARANTOR:

_____

Paine C. Boun

Case 6:14-cv-00206-WSS   Document 1-1   Filed 06/02/14   Page 53 of 73

COMMERCIAL GUARANTY

Sheila Norman, District Clerk
District Court - Bell County, TX
by_____, Deputy
Lacey Martindale

| Borrower: | EAGLE EYES INVESTMENTS LLC<br>4305 South 31st Street<br>Temple, TX 76502 | 270,233 Lender: | Mack One Capital, Inc.<br>Corporate Office<br>18800 MacArthur Blvd.<br>Suite 150<br>Irvine, CA 92612 |
|---|---|---|---|
| Guarantor: | Clara Boun<br>1032 S. Hidago Ave<br>Alhambra, CA 91801 | | |

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, Lender's reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other (unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation and Lender's written acknowledgment of receipt. For this purpose and without limitation, the term "new Indebtedness" does not include the indebtedness which at the time of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Guarantor prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening or otherwise effecting Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including claims for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

Tax Returns. As soon as available, but in no event later than one-hundred-twenty (120) days after the applicable filing date for the tax reporting period ended, Federal and other governmental tax returns, prepared by a tax professional satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower,

Lender, any surety, endorser, or other guarantor in connection with the indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor waives all rights of Guarantor under Chapter 34 of the Texas Business and Commerce Code. Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the indebtedness; (D) any right to claim discharge of the indebtedness on the basis of unjustified impairment of any collateral for the indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS. Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR. Guarantor agrees that the indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Guaranty:

Amendments. This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Attorneys' Fees; Expenses. Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

Caption Headings. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions.

Choice of Venue. If there is a lawsuit, and if the transaction evidenced by this Guaranty occurred in Bell County, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Bell County, State of Texas.

Integration. Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

Interpretation. In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

Notices. Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Successors and Assigns. Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically

stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code.

Borrower. The word "Borrower" means EAGLE EYES INVESTMENTS LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

GAAP. The word "GAAP" means generally accepted accounting principles.

Guarantor. The word "Guarantor" means everyone signing this Guaranty, including without limitation Clara Boun, and in each case, any signer's successors and assigns.

Guaranty. The word "Guaranty" means this guaranty from Guarantor to Lender.

Indebtedness. The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

Lender. The word "Lender" means Mark One Capital, Inc., its successors and assigns.

Note. The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED OCTOBER 7, 2008.

GUARANTOR:

X _____
Clara Boun

ADDENDUM TO COMMERCIAL GUARANTY

This ADDENDUM TO COMMERCIAL GUARANTY (the "Addendum") is attached to and made a part of that certain Commercial Guaranty made by Clara Boun ("Guarantor") in favor of Mark One Capital, Inc. (the "Guaranty"). All capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Guaranty.

In consideration of good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, the undersigned hereby agree as follow:

1.       The following terms in "Definitions" Section of the Guaranty hereby are inserted or amended to read as follows:

(i)      Business Loan Agreement. The word "Business Loan Agreement" means the Business Loan Agreement of even date herewith between Borrower and Lender.

(ii)     Notes. The word "Notes" means the Business Loan Agreement and any promissory notes evidencing amounts outstanding from Borrower to Lender under the Business Loan Agreement, together with all renewals of, extensions of, refinancings of, consolidations of and substitutions for the Business Loan Agreement and any such notes.

2.       Notwithstanding anything contained in the Guaranty, in the Business Loan Agreement, in the Notes or in any of the Related Documents to the contrary, this Guaranty shall only be a guaranty of amounts outstanding under the Business Loan Agreement, the Notes and the Related Documents, including, without limitation, all principal and interest outstanding there under and all fees, costs of collection, advances and other amounts payable to Lender under the Business Loan Agreement, the Notes and Related Documents, but shall not be deemed a guaranty of any other obligations of Borrower to Lender.

3.       In the event of a conflict between the terms of the Guaranty and the terms of this Addendum, the terms of this Addendum shall control.

IN WITNESS WHEREOF, the undersigned have executed this Addendum, or have caused this Addendum to be executed, as of the ⁴ᵗʰ day of _October_____, 2008.

LENDER:

Mark One Capital, Inc.

By:_____
Name:_____
Title:_____

GUARANTOR:

_____
Clara Boun

Feb 6/7/2014 11:19:51 AM
Sheila Norman, District Clerk
District Court - Bell County, TX
by_____ , Deputy
Lacey Martindale

270,233-B

## MODIFICATION AND FORBEARANCE AGREEMENT

| THE STATE OF TEXAS | § |
| COUNTY OF BELL | § |

This Modification and Forbearance Agreement ("Agreement") is executed by and among **Eagle Eyes Investments LLC** ("Borrower"), **Paine C. Boun, Limei Lin, Seng C. Lin, and Clara Boun** (collectively called "Guarantors") and **Bank of the West** ("Bank"), for the purposes and consideration set forth herein.

### Recitals

WHEREAS, Mark One Capital, Inc. previously made a loan (the "Loan") to Borrower, which Loan was evidenced by, among other things, the following instruments, all of which were dated and effective as of October 7, 2008:

    (a)    Business Loan Agreement;

    (b)    Promissory Note (the "Note") in the stated principal amount of $2,900,000;

    (c)    Deed of Trust recorded at Document No. 2008-00042103 in the Real Property Records of Bell County, covering the real and personal property described therein and on the attached Exhibit A (the "Property");

    (d)    Assignment of Rents recorded at Document No. 2008-00042104 in the Real Property Records of Bell County;

    (e)    Commercial Guaranties signed by each of the Guarantors;

    (f)    Life of Loan Reserve Account Agreement.

WHEREAS, the Note, the Deed of Trust, and all other documents and instruments executed as security for or otherwise in connection with the Loan (including those referenced above) are herein collectively called the "Loan Documents" and are hereby incorporated by this reference for all purposes, to the same extent as if set out herein verbatim;

WHEREAS, on October 10, 2008, all of the Loan Documents were assigned and endorsed to the Bank, as evidenced by the Assignments recorded at Document Nos. 2008-00042113 and 2008-00042114 in the Real Property Records of Bell County

WHEREAS, Borrower has requested that the interest rate on the Note be reduced and the monthly payments be interest-only for a 12-month period; and

WHEREAS, the Borrower, Guarantors, and the Bank desire to make certain modifications to the Loan Documents as set forth below.

### Agreements

NOW, THEREFORE, the parties hereto agree as follows:

1.      Modification of Interest Rate and Note Payments.  The parties agree that, for the period beginning on December 5, 2011 and ending on December 5, 2012, the interest rate on the Note shall be reduced to 5.5% *per annum*.  In addition, the 12 monthly Note payments commencing with the payment due on January 5, 2011 and ending with the payment due on December 5, 2012 shall be interest-only, based on the current outstanding principal balance owing on the Note.  So long as there are no defaults under the Loan Documents, Borrower shall not be required to make any principal payments during the period of January 5, 2011–December 5, 2012.  The difference in the fully amortized and interest-only payment provided for above shall be added to a balloon payment due at the maturity date of the Note.  *Provided however*, if the Borrower fails to (i) make all payments on the Note (as modified herein) on a timely basis, (ii) pay all ad valorem taxes on the Property, insurance premiums, or other amounts required to be paid under the Loan Documents on a timely basis, and (iii) comply with all other terms of the Loan Documents, the Bank may (in its sole discretion) accelerate the maturity of the Note without further notice, and may exercise all of its rights and remedies under the Loan Documents.  *Provided further*, effective December 5, 2012, the interest rate on the Note shall be revert back to 6.37% *per annum*, and the regularly-scheduled monthly payments on the Note shall resume on January 5, 2013.

2.      Reaffirmation.  Except as expressly modified in this Agreement, the Borrower and each Guarantor reaffirms all of their respective representations, warranties, covenants, and agreements set forth in the Loan Documents, with the same force and effect as if each were separately stated herein and made as of the date hereof.  Guarantors shall continue to personally guarantee the repayment of all of Borrower's obligations to the Bank.

3.      No default or defenses.  Borrower and Guarantors each warrant that none of them have any claims, defenses, or rights of setoff or recoupment with respect to any of the Loan Documents.  Borrower further acknowledges and represents that, except for the delinquency described above, no event has occurred, and no condition exists that would constitute a default under the Loan Documents.  This Agreement modifies the Loan Documents, but in no way acts as a release of any party from liability, nor a release or relinquishment of the liens securing payment of the Note, including without limitation the liens created by the Deed of Trust.  All such liens are hereby renewed, extended,

Modification and Forbearance Agreement          2

ratified, confirmed, and carried forward by Borrower in all respects. Borrower and each Guarantors hereby waives, releases and discharges the Bank from any and all complaints, claims, charges, claims for relief, demands, suits, actions and causes of action, whether in law or in equity, which either Borrower or Guarantors asserts or could assert at common law or under any statute, rule, regulation, order or law, whether federal, state or local, on any ground whatsoever, whether or not known, suspected, liquidated, contingent or matured, with respect to any event, matter, claim, occurrence, damages or injury arising out of, connected with or associated with any or all of the Note, Loan Agreement, Deed of Trust, Assignment of Rents or Guaranties, against the Bank or any of its current or former owners, officials, directors, officers, shareholders, affiliates, agents, representatives, servants, attorneys, subsidiaries, parents, divisions, branches, units, successors, predecessors, assigns and employees. This Agreement shall extend and apply to all unknown, unsuspected and unanticipated injuries and damages as well as those may be known. By entering into this Agreement, the Bank does not admit any liability whatsoever to Borrower, Guarantors or to any other person or entity arising out of any claims heretofore or hereafter asserted by Borrower, Guarantors or other person or entity, and Bank expressly denies any and all such liability. This Agreement may not be used as evidence to prove any alleged wrong in any action brought or proceeding initiated by Borrower.

4. **NO ORAL AGREEMENTS. THIS AGREEMENT AND THE LOAN DOCUMENTS MODIFIED BY THIS AGREEMENT CONSTITUTE A "LOAN AGREEMENT" UNDER SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE AND REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

5.    Miscellaneous. Any default under this Agreement shall constitute a default under the Business Loan Agreement referenced above. Time is of the essence with respect to all obligations of Borrower and Guarantors. This Agreement may be signed in multiple counterparts, and shall not become effective unless and until (i) it is signed by all parties, and (ii) . This Agreement shall be binding upon and inure to the benefit of the Bank, Borrower, Guarantors, and their respective heirs, legal representatives, successors, and assigns. This Agreement may be signed and delivered to other parties via fax or email, followed by the delivery of a signed original counterpart.

6.    Effective Date. This Agreement shall be effective for all purposes as of December 5, 2011.

[Remainder of Page Blank—Signatures Follow on Next Page]

Modification and Forbearance Agreement          3

EAGLE EYES INVESTMENTS LLC

By: _Paine C. Boun_   1-25-12

Paine C. Boun,
Manager

By: _____   1-25-12

Seng C. Lin,
Manager


_Paine C. Boun_   1-25-12

Paine C. Boun, individually


_____   1-25-12

Seng C. Lin, individually


_____   1-25-12

Clara Boun, individually


_____   1-25-12

Limei Lin, individually


BANK OF THE WEST


By: _____

Steve M. Dennison
Vice President


Modification and Forbearance Agreement          4

THE STATE OF CALIFORNIA §
§
COUNTY OF _____ §

       This instrument was acknowledged before me on January ___, 2012 by Paine C. Boun, both (i) individually, and (ii) as a Manager of Eagle Eyes Investments LLC, on behalf of that limited liability company.

CERTIFICATE IS ATTACHED

_____
Notary Public in and for
The State of CALIFORNIA

THE STATE OF CALIFORNIA §
§
COUNTY OF _____ §

       This instrument was acknowledged before me on January ___, 2012 by Seng C. Lin, both (i) individually, and (ii) as a Manager of Eagle Eyes Investments LLC, on behalf of that limited liability company.

CERTIFICATE IS ATTACHED

_____
Notary Public in and for
The State of CALIFORNIA

THE STATE OF CALIFORNIA §
§
COUNTY OF _____ §

       This instrument was acknowledged before me on January ___, 2012 by Clara Boun.

CERTIFICATE IS ATTACHED

_____
Notary Public in and for
The State of CALIFORNIA

THE STATE OF CALIFORNIA §
                        §
COUNTY OF _____ §

        This instrument was acknowledged before me on January ___, 2012 by Limei Lin.

CERTIFICATE IS ATTACHED
_____
Notary Public in and for
The State of CALIFORNIA


THE STATE OF CALIFORNIA     §
                        §
COUNTY OF _____ §

        This instrument was acknowledged before me on January ___, 2010 by Steve M. Dennison, Vice President of Bank of the West, on behalf of that bank.


_____
Notary Public in and for
The State of CALIFORNIA

## EXHIBIT "A"

Field notes for an 8.005 acre tract in Temple, Bell County, Texas, out of and a part of the MAXIMO MUÑÓÑG SURVEY, ABSTRACT 814, and the tract herein described being all of Lot 1, Block 1, Westward LTD Subdivision, a dedicated subdivision to the City of Temple, Bell County, Texas, according to the plat of record in Cabinet C, Slide 204-B, Plat Records, Bell County Texas, said 8.005 acre tract being more fully described as follows:

Beginning at an iron rod found in the East line of South 31st Street (FM 1741) for the Northwest corner of it is L.out, the Northwest corner of the said Lot 1, Block 1, Westward LTD Subdivision, and the most Westerly Southwest corner of a certain 30.8334 acre tract described in a deed to H. E. Butt Grocery Company of record in Volume 2728, page 397, Deed Records, Bell County, Texas.

Thence: South 74° 03' 41'"East, 480.47 feet, an iron rod found and South 74° 03' 41'" East, 477.72 feet with the North line of this tract, the North line of the said Lot 1, Block 1, Westward LTD Subdivision, and with the South line of the aforementioned 30.8334 acre tract to an iron rod found for the Northeast corner of this tract, the Northeast corner of the said Lot 1 Block 1, Westward LTD Subdivision, an Ell corner in the West line of the aforementioned 30.8334 acre tract, and the Northwest corner of a certain 3.667 acre drainage easement; to the City of Temple, Bell County, Texas, described in Volume 4088, page 491, Deed Records, Bell County, Texas.

Thence: South 15° 45' 01'" West, 351.50 feet with the East line of this tract, the East line of the said Lot 1, Block 1 Westward LTD, the West line of the aforementioned 30.8334 acre tract, being the West line of the above mentioned 3.667 acre drainage easement, and with the West line of a certain 0.248 acre Right-of-Way Deed described in a deed to the City of Temple, Bell County, Texas, of record in Volume 4066, page 309 Deed Records, Bell County, Texas, to an iron rod found in the North line of the remainder of Block 1, Spanish Southwest, for the Southeast corner of this tract, the Southeast corner of the said Lot 1, Block 1, Westward LTD Subdivision, and the most Southerly Southwest corner of the aforementioned 30.8334 acre tract, being also the Southwest corner of the aforementioned 0.248 acre tract.

Thence: North 74° 15' 05'" West, 484.20 feet, an iron rod found and North 74° 01' 57'" West, 480.79 feet with the South line of this tract, the South line of the said Lot 1, Block 1, Westward LTD Subdivision, the North line of the aforementioned remainder of Block 1, Spanish Southwest, and with the North line of Grady Subdivision, a dedicated subdivision to the City of Temple, Bell County, Texas according to the plat of record in Cabinet C Slide 242-D, Plat Records, Bell County, Texas, to an iron rod found in the East line South 31st Street for the Southwest corner of this tract, the Southwest corner of the said Lot 1 Block 1, Westward LTD Subdivision, and the Northwest corner of Grady Subdivision

Thence: North 16° 49' 23'" East, 362.91 feet with the West line of this tract, the West line of the said Lot 1, Block 1 Westward LTD Subdivision and with the East line of South 31st Street to the place of BEGINNING containing 8.005 acres of land.

All bearings are grid bearings based on Texas Plane Coordinates, NAD83, ZONE 4202, and City of Temple Monument #151.10,360.421.12 North and 3,223,026.41 East, Convergence 1deg 31' 27 '".

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of **Los Angeles** }

On **Jan 25, 2012** before me, **N. SRIROCHANAKUL Notary Public**
      Date                                  Here Insert Name and Title of the Officer

personally appeared **PAINE CIN BOUN, SENG C LIN, CLARA BOUN**
                                           Name(s) of Signer(s)

and **LIMEI LIN**

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

```
N. SRIROCHANAKUL
Commission # 1917381
Notary Public - California
Los Angeles County
My Comm. Expires Jan 13, 2015
```

Place Notary Seal Above

Signature: _____
                       Signature of Notary Public

— **OPTIONAL** —

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: **Modification and Forbearance Agreement**

Document Date: **Jan 25, 2012**        Number of Pages: **(Seven)**

Signer(s) Other Than Named Above: **NONE**

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | | Signer's Name: _____ | |
| --- | --- | --- | --- |
| ☐ Corporate Officer — Title(s): _____ | | ☐ Corporate Officer — Title(s): _____ | |
| ☐ Individual | **RIGHT THUMBPRINT OF SIGNER** Top of thumb here | ☐ Individual | **RIGHT THUMBPRINT OF SIGNER** Top of thumb here |
| ☐ Partner — ☐ Limited ☐ General | | ☐ Partner — ☐ Limited ☐ General | |
| ☐ Attorney in Fact | | ☐ Attorney in Fact | |
| ☐ Trustee | | ☐ Trustee | |
| ☐ Guardian or Conservator | | ☐ Guardian or Conservator | |
| ☐ Other: _____ | | ☐ Other: _____ | |
| Signer Is Representing: _____ | | Signer Is Representing: _____ | |

Shelia Norman, District Clerk
District Court - Bell County, TX
by_____ , Deputy
Lacey Martindale

270,233-B

**Situs**

Situs Holdings, LLC
2 Embarcadero Center, Suite 1300
San Francisco, CA 94111
Phone:  415.374.2820
Fax:    415.374.2704
www.situs.com

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

July 19, 2013

## NOTICE OF ACCELERATION

### VIA FEDERAL EXPRESS

~~Eagle Eyes Investments LLC~~
790 The City Dr. Ste. 100
Orange, CA 92868

Re:    $2,900,000.00 loan (the "Loan") between Eagle Eyes Investments LLC as borrower
       ("Borrower"), and Bank of the West, as lender, secured, inter alia, by that certain
       Deed of Trust dated as of 10/07/08 in the original principal amount of
       $2,900,000.00 and recorded against real property located at 4305 South 31st Street,
       Temple, TX in favor of Lender (together with all other documents evidencing or
- - - securing the Loan, the "Loan Documents"). Account Number: 7801003. - - - - - -

Dear Borrower:

The original lender under the Note and Security Instrument, Bank of the West, assigned all
of its right, title, and interest in and to the Note, Security Instrument, and all other
documents further evidencing, securing, or executed in connection with the indebtedness
owed under the Note (collectively, the "Loan Documents") to 650 Frontier LLC
("Lender"). Lender is the current holder and owner of the Note, Security Instrument, and
other Loan Documents. Situs Holdings, LLC ("Situs") has been appointed as special
servicer by and for Lender.

Under the Loan Documents, you are obligated to make payments of debt service to Lender
on a monthly basis. You are hereby provided formal notice that Borrower is in default of
its obligations under the Loan Documents for, inter alia, failure to make debt service
payments for the months of 8/05/12 through 7/19/13.

Under the Loan Documents, due to your failure to make debt service payments as and
when due, Lender is entitled to accelerate the maturity date of the monetary obligations
owed under the Loan Documents. You are hereby provided formal notice of Lender's
acceleration of the maturity date of the monetary obligations owed under the Loan
documents. All monetary obligations owed under the Loan Documents are now
immediately due and owing to Lender in full.

Eagle Eyes Investments, LLC
July 19, 2013

Please note that Lender may pursue any other available rights and remedies under the
Loan Documents or at law or in equity, without further notice or demand, and all as Lender
may determine in its sole discretion. Such rights and remedies include, but are not limited
to, the appointment of a receiver to take possession of and administer the Property and
foreclosure of the Property.

Any partial payment made by Borrower or acceptance of any partial payment by Lender,
or any of its representatives or loan servicing agents, of any amount that is not sufficient to
satisfy in full Borrower's obligations under the Loan Documents is not intended, and shall
not be deemed, to constitute a waiver of Lender's rights, remedies, or recourse under the
Loan Documents or at law or in equity. Any application of any such payment is not
intended, and shall not be deemed, to be a modification, rearrangement, reinstatement, or
extension of the existing Loan Documents. Any such payment shall be applied in such
order as Lender may elect in its sole discretion, without any waiver by Lender of its right
to pursue any of its rights and remedies under the Loan Documents or at law or in equity.

Lender, or Situs, or other agents, may, from time to time, generate automated billing
statements or other statements that are forwarded to Borrower or to other persons or
entities on a monthly or other periodic basis. The forwarding to you of any billing
statement from this time forward, including any billing statement that purports to state
amounts due and owing by Borrower that are different from the accelerated indebtedness
owed, may not be relied upon by Borrower, does not act to de-accelerate or reinstate the
debt in any manner, and does not result in any waiver of Lender's rights as set forth herein,
all of which are reserved in their entirety.

Any past or future negotiation between you or your representatives or agents on the one
hand and Lender and its representatives or agents on the other do not and shall not
constitute a waiver of Lender's right to exercise its rights and remedies under the Loan
Documents or at law or in equity. Any alleged waiver of any of Lender's rights shall not be
effective unless in writing duly executed by an authorized representative of Lender.
Neither Borrower nor any other obligor for the indebtedness owed under the Loan
Documents shall be entitled to rely upon any oral statements made or purported to be made
by or on behalf of Lender or its agents in connection with any alleged agreement by or on
behalf of Lender to refrain from exercising any of Lender's rights under the Loan
Documents or otherwise at law or in equity.

Nothing set forth herein is intended, and shall not be deemed, to modify, limit, release,
reduce, or waive any of Lender's rights, remedies, or privileges under the Loan Documents,
or at law or in equity, all of which are hereby specifically reserved. Furthermore, the
enumeration of any specific default herein is not intended and shall not be deemed to
waive other defaults that may currently exist under the Loan Documents.

Eagle Eyes Investments, LLC
July 19, 2013

If you wish to engage in any discussions with Lender with respect to the obligations owed
under the Loan Documents, or you need payment instructions, please contact me directly.

Sincerely,

Jason Reed
Asset Manager
(267) 282-6728

cc:

| | |
|---|---|
| Clara Boun | Limei Lin |
| 1032 S. Hidalgo Ave. | 511 W. Newby Ave. |
| Alhambra, CA 91801 | San Gabriel, CA 91776 |
| | |
| Paine C. Boun | Seng C. Li |
| 611 W. Newby Ave. | 1032 S. Hidalgo Ave. |
| San Gabriel, CA 91776 | Alhambra, CA 91801 |

3 | P a g e

Sheila Norman, District Clerk
District Court - Bell County, TX
by_____, Deputy
Lacey Martindale

270,233-B

 **Situs** Situs Holdings, LLC
2 Embarcadero Center, Suite 1300
San Francisco, CA 94111
Phone:  (415) 374-2820
Fax:  (415) 374-2704
www.situs.com

December 19, 2013

**FEDEX: DELIVERY NOTIFICATION REQUIRED**

Eagle Eyes Investments LLC          Eagle Eyes Investments LLC
790 The City Drive, Suite 100       4305 South 31st Street
Orange, California 92868            Temple, Texas 76502

Limei Lin                          Clara Boun
511 W. Newby Avenue                1032 S. Hildago Ave.
San Gabriel, California 91776      Alhambra, California 91801

Paine C. Boun                      Seng C. Lin
511 W. Newby Avenue                1032 S. Hidalgo Ave.
San Gabriel, California 91776      Alhambra, California 91801

RE:   **Property: 4305 South 31st Street, Temple, Texas 76502**
      **Loan Number: 7801003**

Ladies and Gentlemen:

As you are aware, Situs Holdings, LLC ("Situs") is the servicer and attorney-in-fact for 650 Frontier LLC ("Lender"). Lender is the owner and holder of that certain Promissory Note dated October 7, 2008, in the original principal amount of $2,900,000.00 (the "Note"), the maker of which is Eagle Eyes Investments LLC ("Borrower"). Lender is also the owner of and current beneficiary under that certain Deed of Trust dated October 7, 2008 (the "Security Instrument"), signed by Borrower, pursuant to which Lender has a lien on and security interest in certain real property, and improvements thereon, located at 4305 South 31st Street, Temple, Texas 76502, and certain personal property owned by Borrower in connection therewith (such real and personal property being hereinafter referred to collectively as the "Property"). Further, Lender is the owner of those four Commercial Guarantys dated October 7, 2008 (collectively, the "Guarantys"), signed by Limei Lin, Paine C. Boun, Clara Boun, and Seng C. Lin (collectively, "Guarantors").

The Note, Security Instrument, Guarantys, and all other documents further evidencing, securing, or executed in connection with the indebtedness owed under the Note are, together with the Note, hereinafter referred to as the "Loan Documents." The loan transaction evidenced by the Loan Documents is hereinafter referred to as the "Loan."

Lender's predecessor-in-interest, Bank of the West, entered into a Modification and Forbearance Agreement, dated December 5, 2011 (the "Forbearance Agreement"), with Borrower and Guarantors. Under the Forbearance Agreement, Bank of the West agreed to temporarily accept interest-only monthly payments from Borrower at a reduced interest rate, with the difference between the regular payments and reduced interest payments being added to the balloon payment due on the Loan at maturity. Also under the Forbearance Agreement, Borrower agreed to resume making its regular monthly payments on January 5, 2013. Borrower's regular monthly payment amount was $18,256.21.

46683749.3

Eagle Eyes Investment LLC
December 19, 2013
Page 2

I have been informed that Borrower alleges that a representative of Bank of the West orally agreed to extend the time period for interest-only payments beyond the January 5 deadline stated in the Forbearance Agreement. In Section 4 of the Forbearance Agreement, however, Borrower agreed, in all bold and capital letters, that the terms of the Forbearance Agreement may not be modified by oral agreements. If Borrower is in possession of any written modification of the Forbearance Agreement, please forward that to my attention. Otherwise, Lender will adhere to the written terms of the Loan Documents and Forbearance Agreement.

Lender became the owner of the Loan and Loan Documents in November 2012. After January 5, 2013, Lender received the following partial payments on the Loan:

| January 11, 2013 | $12,463.65 |
| January 15, 2013 | $12,879.10 |
| February 11, 2013 | $12,879.10 |
| March 12, 2013 | $12,879.10 |
| April 12, 2013 | $12,879.10 |
| May 14, 2013 | $12,879.10 |
| June 10, 2013 | $12,879.10 |
| July 11, 2013 | $12,879.10 |

On July 19, 2013, due to Borrower's failure to make its regular monthly payments for the months of January 2013 through July 2013, Lender accelerated the maturity date of the Loan in accordance with the terms of the Loan Documents. Lender, acting by and through its servicer, Situs, sent a letter dated July 19, 2013, notifying Borrower and Guarantors of Lender's acceleration of the Loan (the "Acceleration Letter"). A copy of the Acceleration Letter is enclosed with this letter for your reference. Note that the Acceleration Letter incorrectly states that Borrower was in default for its failure to make debt service payments for the time period of August 5, 2012, through July 19, 2013. The time correct period for Borrower's payment defaults is January 2013 through July 2013.

I have been informed that Jason Reed at Situs and Yan Lin, which is Borrower's and Guarantors' representative with respect to the Loan, discussed via email in October 2008 whether the effective date of the acceleration of the Loan should be February 5, 2013. Lender hereby confirms that the correct date of the acceleration of the Loan is July 19, 2013, which is the acceleration date stated in the Acceleration Letter.

After the Loan was accelerated, Borrower made the following additional partial payments on the Loan:

| August 8, 2013 | $12,879.10 |
| September 11, 2013 | $12,879.10 |
| October 11, 2013 | $14,335.28 |
| November 12, 2013 | $14,813.13 |
| December 12, 2013 | $14,335.28 |

Borrower's post-forbearance and post-acceleration payments were not in compliance with the Loan Documents, and acceptance of these payments shall not constitute or be deemed or construed as a waiver of any default under the Loan Documents caused by your failure to make the full payment required thereby. In addition, acceptance of these payments or any future payments less than the full amount required under the Loan Documents, shall not constitute or be deemed or construed as a cure of any existing default under the Loan Documents, a modification of the terms

46843749.3

Eagle Eyes Investment LLC
December 19, 2013
Page 3

Documents, or a waiver, modification, relinquishment, or forbearance by Lender of any of its rights
or remedies under the Loan Documents or at law or in equity, all of which rights and remedies
Lender hereby expressly reserves.

Lender shall insist upon and hereby demands exact compliance with all of the terms and
conditions of the Loan Documents, including the obligation to pay all amounts due and payable in
accordance with the terms thereof. In that regard, enclosed with this letter is a payoff statement
showing the amounts currently due and owing on the Loan.

Borrower has been in continual payment default since January 2013. Accordingly, Lender
has elected to proceed with foreclosure of the Property. You will be receiving formal notice of the
foreclosure from Lender's counsel, Polsinelli PC.

If you have any questions regarding the contents of this letter, please contact me. If your
counsel has any questions, please have him contact Lender's counsel, Aaron Jackson, at 816-360-
4277 or ajackson@polsinelli.com.

Sincerely,

Rick Sanchez
Asset Manager
(415) 374-2836

Enclosures

Cc:     Via FedEx
        Joel T. Shackelford, Esq.
        Kaufman Dolowich Voluck
        11755 Wilshire Boulevard, Suite 2400
        Los Angeles, California 90025

        Via Email
        Aaron Jackson at ajackson@polsinelli.com



46683749.3

# EXHIBIT B

server MAIL TO ATTY

# THE STATE OF TEXAS

## NON-RESIDENT CITATION

Cause No. **270233 - 0**

ORIGINAL

To
**SENG C LIN**
**1032 S HILDAGO AVENUE**
**ALHAMBRA, California 91801**

**Defendant,** in the hereinafter styled and numbered cause:
You are hereby commanded to appear by filing a written answer to the **PLAINTIFF'S ORIGINAL PETITION** at or before 10:00 a.m. on the first Monday following the expiration of twenty (20) days from the date of service hereof, with the clerk of the **146TH DISTRICT COURT**, Bell County, Texas, to be held at the Bell County Justice Complex Building, District Courts in Belton, Texas, a copy of which accompanies this citation, in cause number 270233 - 0, styled

> **650 FRONTIER LLC**
> **VS**
> **SENG C LIN**

filed in said court on May 01, 2014.

This was issued at the request of attorney: JAMES BILLINGSLEY,   ATTORNEY AT LAW 1717 MAIN ST. STE. 2800 DALLAS, TEXAS 75201.

**NOTICE TO Defendant:** *You have been sued. You may employ an attorney. If you, or your attorney, do not file a written answer, with the clerk who issued this citation by 10:00 AM on the first Monday following the expiration of twenty (20) days after you were served this citation and petition, a default judgment may be taken against you.*

Witness, Shelia Norman, District Clerk of Bell County, Texas.

Issued and given under my hand and seal of said Court at office in Belton, Texas, on  May 02, 2014.

**Shelia Norman, District Clerk**
Bell County Texas
1201 West Huey Road
P.O. Box 909
Belton, Texas 76513
By _____ Deputy Clerk
       DUNIVESA

## CITATION RETURN OF SERVICE IN ANOTHER STATE

**Cause No. 270233 - 0**

**650 FRONTIER LLC**
**VS**
**SENG C LIN**

IN THE
**146TH DISTRICT COURT**
**BELL COUNTY, TEXAS**

**ADDRESS FOR SERVICE:**
**SENG C LIN**
**1032 S HILDAGO AVENUE**
**ALHAMBRA, California 91801**

**OFFICER'S RETURN**

Came to hand on the _____ day of _____, 20___, at _____, o'clock _____.m., and executed in _____ County, State of _____, by delivering to each of the within named defendants in person, a true copy of this Citation with the date of delivery endorsed thereon, together with the accompanying copy of the **PLAINTIFF'S ORIGINAL PETITION** at the following times and places, to-wit:

| Name | Date/Time | Place, Course and Distance from Courthouse |
| --- | --- | --- |
| | | |

And not executed as to the defendant(s), _____

The diligence used in finding said defendant(s) being:

and the cause or failure to execute this process is:

and the information received as to the whereabouts of said defendant(s) being:

**FEES:**                $_____
Serving Petition and Copy  $_____

Total

_____, Officer

County of _____,

State of _____

By: _____, Deputy

_____
Affiant

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**
In accordance with TRCP Rule 107; the officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The return must either be verified or be signed under penalty of perjury. A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My name is _____, my date of birth is _____, and my address is
          (First, Middle, Last)

_____.
          (Street, City, Zip)
I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the _____ day of _____.

_____
Declarant/Authorized Process Server

_____
(Id # & expiration of certification)

**Rule 108.** - **Service in Another State.** Where the defendant is absent from the State, or is a nonresident of the State, the form of notice to such defendant of the institution of the suit shall be the same as prescribed for citation to a resident defendant; and such notice may be served by any disinterested person who is not less than eighteen years of age, in the same manner as provided in Rule 106 hereof. The return of service in such cases shall be completed in accordance with Rule 107. A defendant served with such notice shall be required to appear and answer in the same manner and time and under the same penalties as if he had been personally served with a citation within this State to the full extent that he may be required to appear and answer under the Constitution of the United States in an action either in rem or in personam.

bdc_cnr